IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 05-cv-00574-WDM-MJW

JAMES A. TAYLOR,

      Plaintiff,

v.

JOE ORTIZ, CDOC, Current Executive Director,
MR. SUTTON, CDOC, Former Executive Director,
JOHN DOE, CDOC, Former Executive Director,
AL ESTEP, LCF Current Superintendent/Warden,
GARY WATKINS, LCF Former Superintendent,
MR. SOARES, LCF Former Superintendent,
JOSEPH MC GARRY, CDOC Chief Medical Officer,
BARRY PARDUS, CDOC Director of Medical Services,
DON LAWSON, CDOC Chief Pharmacy Officer,
JOHN H. BLOOR, M.D., Ph.D CDOC Hepatology Director,
JOHN DOE, LCF Current Clinic Team Leader,
MR. PETROZZI, LCF Former Clinic Team Leader,
ANITA BLOOR, M.D., LCF Primary Care Provider,
JOHN DOE, Colorado Access Medical Officer,
JOHN DOE, Access Correctional Care, Chf. Med. Officer,
RODERIC GOTTULA, CDOC Consultant Specialist, and
TONY DE CESARO, CDOC Step III Grievance Officer,

      Defendants.

---

**RECOMMENDATIONS ON
(1) PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION (Docket No. 3);
(2) DEFENDANT DECESARO'S MOTION FOR SUMMARY JUDGMENT OR IN THE
ALTERNATIVE MOTION TO DISMISS COMPLAINT (Docket No. 13); and
(3) MOTION TO DISMISS FROM DEFENDANTS JOSEPH ORTIZ, BARRY PARDUS,
CHRIS PETROZZI, DON LAWSON, AL ESTEP, ANITA BLOOR, GARY WATKINS,
JOHNS SUTHERS, JOHN BLOOD AND JOSEPH MCGARRY (Docket No. 29)**

---

**MICHAEL J. WATANABE
United States Magistrate Judge**

     This case is before this court pursuant to an Order of Reference to Magistrate

2

Judge issued by District Judge Walker D. Miller on May 26, 2005 (Docket No. 15).

**PLAINTIFF'S ALLEGATIONS:**

On March 23, 2005, the court received the pro se plaintiff's Prisoner Complaint (Docket No. 2) and the Plaintiff's Motion for Preliminary Injunction (Docket No. 3), both of which are dated March 17, 2005, but the Certificate of Service attached to the Complaint states that it was mailed on March 22, 2005 (the Certificate attached to the motion is incomplete with regard to the date).

Named as defendants in this action are the current and former Executive Directors of the Colorado Department of Corrections ("CDOC") (defendants Ortiz and Sutton); the current and two former superintendents of Limon Correctional Facility ("LCF"), where the plaintiff is housed (defendants Estep, Watkins, and Soares); the CDOC Chief Medical Officer (defendant McGarry); the CDOC Director of Medical Services (defendant Pardus); the CDOC Chief Pharmacy Officer (defendant Lawson); the CDOC Hepatology Director (defendant John Bloor); the LCF former clinic team leader (defendant Petrozzi); the LCF primary care provider (defendant Anita Bloor, M.D.); the CDOC Consultant Specialist (defendant Gottula); and the CDOC Step III Grievance Officer (defendant DeCesaro); plus four John Does. Plaintiff is suing each defendant "as an individual acting under color of state law." (Compl. At 9; Request for Relief).

In the lengthy Prisoner Complaint, which is not a model of clarity, plaintiff raises the following three claims: (1) a violation of the Eighth Amendment for failure to provide medical treatment for the plaintiff's Hepatitis C; (2) a violation of the Fourteenth

Amendment due to the defendants denying treatment for the plaintiff's Hepatitis C based upon the plaintiff's age, which deprived him of his constitutional right to due process of law and equal protection; and (3) a violation of the Fourteenth Amendment due to the defendants denying treatment of the plaintiff's Hepatitis C based upon the defendants' construction and implementation of treatment protocol which is vague and arbitrary.

More specifically, plaintiff's allegations in his pleading including the following. He was diagnosed as having Hepatitis C in 1997, and he has continuously experienced the debilitating physical and metal effects of Hepatitis C in its active phase.  When he was informed of the diagnosis, he asked if there was any treatment available and if so, that he be given it.  "The Defendants answered that yes, there was a treatment which included a liver biopsy.  However, Defendants told Plaintiff that because of his age (66 at the time), that there was no need for treating him, because he would most likely die of a heart attack or some other cause; that the hepatitis C would not cause him any major harm."  (Compl. At 4-4a).

Plaintiff's symptoms (itching, fatigue, and edema) continued, and he was told to get more rest, and he was given different oral medications for the itching.  In 1999-2000, his symptoms continued, and then in the latter part of 2002, they began to increase, and he also had more fluid retention in his lower legs, ankles, and feet, swelling in his upper stomach area accompanied by a deep-seated tenderness or pain, and his urine changed color and had a foul odor.  (Compl. At 5a.).  Plaintiff continued to inquire about treatment, but each time defendants responded that it would do no good

4

and that he was too old.

Blood samples were taken twice a year to monitor the Hepatitis C, and plaintiff was told the results would be used in order to help defendants study and track the disease.  Usually when the blood draws were done, plaintiff would ask about whether he should be given treatment, and each time the response was that he did not need treatment because of his age.

Defendants subsequently passed out copies of their April 2003 Hepatitis C Treatment Protocol, at which time plaintiff saw that the symptoms he had been experiencing exactly matched what was set forth in the Protocol and that his symptoms designated him as being in the "highest risk" category for developing fatal liver cancer or end-stage liver disease.  Plaintiff thus again asked defendants for treatment, but this time he was told he was "too old" to be given any of the treatment.  Plaintiff contends that the Protocol is vague and arbitrary with regard to how it is written regarding references to age.

Plaintiff believes the defendants must have known from the beginning (1997-98) that he was in the high-risk category.  Upon his first review of his LCF medical file on December 28, 2004, he saw for the first time that he was diagnosed with cirrhosis of the liver as far back as September 11, 2001.

Plaintiff seeks the following relief:  immediate medical treatment for his Hepatitis C, $250,000 in compensatory damages, and $500,000 in punitive damages.  (Compl. At 9, Request for Relief).

**PENDING MOTIONS**

5

Now before the court for report and recommendation are the following three[1]

motions:  (1) Plaintiff's Motion for Preliminary Injunction (Docket No. 3); (2) Defendant

DeCesaro's Motion for Summary Judgment or in the Alternative Motion to Dismiss

Complaint (Docket No. 13); and (3) Motion to Dismiss from Defendants Joseph Ortiz,

Barry Pardus, Chris Petrozzi, Don Lawson, Al Estep, Anita Bloor, Gary Watkins, Johns

Suthers, John Blood and Joseph McGarry (Docket No. 29).  Plaintiff filed responses to

the defendants' motions, and the respective moving defendants filed a reply.  The court

now being fully informed makes the following findings, conclusions, and

recommendations.

### Plaintiff's Motion for Preliminary Injunction (Docket No. 3).

At the time he submitted his Prisoner Complaint, the plaintiff also filed a motion

for a preliminary injunction.  (Docket No. 3).  No responses have been filed, which is

understandable given that the Certificate of Service attached to the motion indicates

that the plaintiff sent a copy only to the Colorado Attorney General's Office, with the

notation "Attorney for Defendants."  The Attorney General, however, is not counsel for

the named defendants.  Pursuant to Fed. R. Civ. P. 65(a), "[n]o preliminary injunction

shall be issued without notice to the adverse party."  In view of the fact that the plaintiff

has not provided notice of his motion to any of the named defendants, it is

---

[1]A fourth motion, Defendant Roderic Gottula's Motion to Dismiss (Docket No. 39), is also pending and was recently converted by this court to a motion for summary judgment.  (Docket No. 55).  In a document filed on February 22, 2006 (Docket No. 56), plaintiff claimed he never received a copy of this motion, so this court had a copy sent to the plaintiff and gave the plaintiff until March 13, 2006, to file a Response.  (See Docket No. 57).

recommended that his motion be denied without prejudice.

### Defendants' Dispositive Motions

For purposes of a motion to dismiss, the court must accept all factual allegations in the complaint as true and resolve all reasonable inferences in plaintiff's favor.  Morse v. Regents of the Univ. of Colo., 154 F.3d 1124, 1126 (10th Cir. 1998); Seamons v. Snow, 84 F.3d 1226, 1231-32 (10th Cir. 1996).  A case should not be dismissed for failure to state a claim unless the court determines beyond doubt that plaintiff can prove no set of facts which entitles him to relief.  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

Furthermore, Rule 56(c) provides that summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "A party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, interrogatories, and admissions on file together with affidavits, if any, which it believes demonstrate the absence of genuine issues for trial."  Robertson v. Board of County Comm'rs of the County of Morgan, 78 F. Supp.2d 1142, 1146 (D. Colo. 1999) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Mares v. ConAgra Poultry Co., 971 F.2d 492, 494 (10th Cir. 1992)).  "Once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in the complaint, but must respond with specific facts showing the existence

of a genuine factual issue to be tried. . . .   These facts may be shown 'by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings by themselves.'"  Southway v. Central Bank of Nigeria, 149 F. Supp.2d 1268, 1273 (D. Colo. 2001), aff'd, 328 F.3d 1267 (10th Cir. 2003).

"Summary judgment is also appropriate when the court concludes that no reasonable juror could find for the non-moving party based on the evidence presented in the motion and response."  Id.  "The operative inquiry is whether, based on all documents submitted, reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. . . .   Unsupported allegations without 'any significant probative evidence tending to support the complaint' are insufficient . . . as are conclusory assertions that factual disputes exist."  Id.; Robertson, 78 F. Supp.2d at 1146 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); quoting White v. York Int'l Corp., 45 F.3d 357, 360 (10th Cir. 1995)).  "Evidence presented must be based on more than 'mere speculation, conjecture, or surmise' to defeat a motion for summary judgment."  Southway, 149 F. Supp.2d at 1274.  "Summary judgment should not enter if, viewing the evidence in a light most favorable to the non-moving party and drawing all reasonable inferences in that party's favor, a reasonable jury could return a verdict for that party."  Id. at 1273.

Since the plaintiff is not an attorney, his pleadings have been construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers.  See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing Haines v. Kerner, 404 U.S. 519, 520-21 (1972)).  Therefore, "if the court can reasonably read the pleadings to

8

state a claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements. . . .  At the same time, . . . it is [not] the proper function of the district court to assume the role of advocate for the pro se litigant." Id.

**Defendant DeCesaro's Motion for Summary Judgment or in the Alternative Motion to Dismiss Complaint (Docket No. 13).**  Pro se defendant DeCesaro moves for summary judgment or dismissal of the Complaint on the following grounds: (1) he has absolute judicial immunity; (2) he has neither the obligation nor the authority to compel the CDOC to act in any manner; and (3) he did not authorize, participate in, or supervise any action which may be found to be a constitutional deprivation against the plaintiff.

DeCesaro is a Step 3 Grievance Officer.  On December 8, 2004, the plaintiff filed a grievance with DeCesaro regarding plaintiff's medical care.  DeCesaro responded to that grievance by letter on April 14, 2005, in which he stated:

> I have reviewed your Step 3 grievance that you filed with regard to Hepatitis C treatment.
>
> In review of this matter I find that you do not meet the protocol for treatment of Hepatits C.  There are specific factors used in determining who is eligible to receive treatment.  This protocol has been accepted in settlement of recent litigation.  Based upon the fact that you do not qualify for treatment under the conditions of the protocol, I cannot recommend any relief in this matter.
>
> It is your burden to prove your allegations stated in your Step 3 grievance. I have reviewed the facts of this case and determined that you did not meet this burden.  There was no corroborating evidence to provide proof

9

of your allegations.

Your request for relief is denied.  This is the final administrative response in this matter and you have exhausted your administrative remedies. . . .

(Docket No. 34-3).

DeCesaro first asserts that he is entitled to judicial immunity regarding the opinions he issued as the Step 3 Grievance Officer.  He contends that his function is similar to those in the judicial process; he properly exercised his adjudicative power and authority; and his right to absolute judicial immunity is firmly rooted in both Supreme Court and Tenth Circuit jurisprudence (citing Butz v. Economou, 438 U.S. 478, 507 (1978) (finding absolute immunity for administrative judicial officers); Horwitz v. State Bd. of Med. Examiners of State of Colo., 822 F.2d 1508 (10th Cir. 1987)(same)).  DeCesaro asserts that

> the duties of the step 3 grievance officer include the review of the record of the complaint of the offender as well as all of the responses of staff members to the prior steps.  Investigation and determination into the veracity of the various parties to the grievance process is evaluated by Defendant DeCesaro.  Secondly, the Step 3 Grievance Officer is an independent contractor and not a state employee, to ensure impartiality in his findings.  Thirdly, there are many lawsuits that are filed following a decision rendered by the Step 3 Grievance Officer.  Often the unsuccessful party seeks redress in the courts as evidenced by this current action. Finally, the Step 3 Grievance Officer has over fifteen years of experience in correctional law and basis for his recommendations are the application of current case law to the existing factual basis' [sic] which are presented through the grievance process.  The grievance AR 850-04 has safeguards to prevent erroneous decisions or intentional constitutional violations.  The duties of the Step 3 Grievance Officer are the type of quasi-judicial duties which Saavedra [v. City of Albuquerque, 73 F.3d 1525 (10th Cir. 1996),] so clearly illustrates.

(Docket No. 13 at 4-5).

10

"Absolute immunity is recognized only sparingly, and officials seeking the immunity bear the burden of showing that their actions are entitled to such absolute protection. . . .  There is a presumption that qualified immunity is generally sufficient to protect government officials." Gilchrist v. Citty, 71 Fed. Appx. 1 (10th Cir. 2003) (citing Burns v. Reed, 500 U.S. 478, 486-87 (1991)).  In Gilchrist, the Tenth Circuit Court of Appeals noted that "[i]n Butz [v. Economou, 438 U.S. 478 (1978)], the Supreme Court held that agency officials who perform quasi-judicial functions are entitled to absolute immunity from suit. . . .  Later, in Cleavinger v. Saxner, 474 U.S. 193 . . . (1985), the Court extended absolute immunity to federal hearing examiners and administrative law judges.  It refused, however, to accord absolute immunity to employees of the Bureau of Prisons temporarily diverted from their usual duties to serve on a prison discipline committee, . . . because they 'are under obvious pressure to resolve a disciplinary dispute in favor of the institution and their fellow employee.'" Gilchrist v. Citty, 71 Fed. Appx. 1 at *5.

When a court determines whether an official's conduct is quasi-judicial in nature and whether absolute immunity attaches, it must engage in a "functional analysis" of the conduct.  Id.  Six factors, among others, have been identified by the Tenth Circuit, following and applying Cleavinger, "as characteristic of the judicial process and to be considered in determining absolute as contrasted from qualified immunity."  Id.  These factors are:

> (a) the need to assure that the individual can perform his functions without harassment or intimidation; (b) the presence of safeguards that reduce the need for private damages actions as a means of controlling

11

unconstitutional conduct; (c) insulation from political influence; (d) the importance of precedence; (e) the adversary nature of the process; and (f) the correctability of error on appeal.

Id. (quoting Moore v. Gunnison Valley Hosp., 310 F.3d 1315, 1317 (10th Cir. 2002)).

This court finds that not enough information has been provided to allow it to balance all of the above factors but notes the following. With regard to the first factor, given the nature of a correctional environment, there would most likely be a need to assure that the Grievance Officers can perform their functions without harassment or intimidation. The court takes judicial notice that many civil actions are filed against such officers by inmates who are not successful with their grievances. There is little or no information, however, for the court to assess fully the next three factors, namely, whether there are any safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct, insulation from political influence, and the importance of precedence. With regard to the next factor, it does not appear from the CDOC administrative regulations concerning the grievance process that such process is very adversarial in nature. The inmate submits his grievance, and the officer reviews it and has the task of "sufficiently investigat[ing] the circumstances surrounding the problem or complaint and the remedy requested to formulate a meaningful response." AR 850-04(IV)(C)(1). With regard to the final factor outlined above, the correctability of error on appeal, the administrative regulations are quite clear that the decision of the Step 3 "grievance officer is the final agency action." AR 850-04(IV)(C)(1)(c)(4). Based upon the above, and given that "[a]bsolute immunity is recognized only sparingly," Gilchrist v. Citty, 71 Fed. Appx. 1 at *5, this court cannot

find on the record here that DeCesaro is entitled to absolute judicial immunity.

Next, DeCesaro asserts that he does not possess the ability or authority to eliminate any constitutional deprivations and that he did not authorize, participate in, or supervise any constitutional deprivation.  He states that he is an independent contractor who contracts with the CDOC.  He points out that the CDOC regulations, specifically AR 850-04, govern the policy and procedure regarding the operation of the CDOC grievance process, and he asserts that as an independent contractor, he possesses no authority to compel the CDOC to act in any manner.  He further states that the Step 3 Grievance Officer is hired to evaluate and investigate the grievances of offenders who file Step 3 grievances, and such officer investigates the claims and determines whether they have any validity.  The officer may deny the grievance, thereby terminating the grievance process, or if the officer finds that there is merit to the claim, he may make a recommendation to the CDOC Executive Director regarding the grievance.  DeCesaro contends that only the CDOC Executive Director could compel enforcement of the Step 3 Grievance Officer's recommendations to either a CDOC facility or to a private facility that is housing Colorado inmates.

In response, the plaintiff interestingly states in part "that while the Defendant does not have the 'power' to <u>directly</u> 'eliminate' constitutional deprivations – in the sense that he could simply issue an [sic] direct order and the deprivation would immediately disappear – nonetheless, his Step III Grievance Officer position was created to safeguard the citizenship interests of those incarcerated as the Plaintiff is." (Docket No. 34 at 19).

13

"Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation." Foote v. Spiegel, 118 F.3d 1416, 1423 (10th Cir. 1997). "[A] plaintiff must show that an affirmative link exists between the [constitutional] deprivation and either the [defendant's] personal participation, his exercise of control or direction, or his failure to supervise.'" Ledbetter v. City of Topeka, Kan., 318 F.3d 1183, 1187 (10th Cir. 2003). Plaintiff here has not shown such a link. There has been no showing that DeCesaro could do no more than make a recommendation to the Executive Director. DeCesaro did not possess the authority to take corrective action himself or order others to do so. Therefore, it is recommended that defendant DeCesaro's motion be granted.

**Motion to Dismiss From Defendants Joseph Ortiz, Barry Pardus, Chris Petrozzi, Don Lawson, Al Estep, Anita Bloor, Gary Watkins, John Suthers, John Bloor and Jospeh McGarry (Docket No. 29).** These defendants seek dismissal of the Prisoner Complaint pursuant to Fed. R. Civ. P. 12(b)(5) because many of the claims are allegedly barred by the applicable two-year statute of limitations and because the plaintiff has allegedly nonetheless failed to allege any violation of his constitutional rights that was clearly established for qualified immunity purposes.[2]

With regard to the first basis for dismissal, these defendants assert that because the continuing violation doctrine is inapplicable to § 1983 claims, the plaintiff may not rely upon or recover damages from any alleged conduct of the defendants

---

[2]These defendants have withdrawn their argument that the plaintiff failed to exhaust his available administrative remedies.

14

prior to April 14, 2003, to support his § 1983 claims against them.[3]  In response, the

plaintiff asserts that he is not relying on the continuing violation doctrine.  However, he

claims he

> was unaware that the Defendant's [sic] were causing him injury and
> violating his Constitutional rights thereby, until April-May of 2003 when
> the Defendant's [sic] gave him a copy of their Protocol.  At that point,
> when the Plaintiff became aware of the injury, is when the cause of action
> accrued, and the statute of limitations began to run.  The Plaintiff filed his
> Complaint on March 17, 2005, with the Court docketing the case on
> March 29, 2005.  This action was thus properly filed within the applicable
> statute of limitations time period, according to the law governing the case.
> Therefore, the Defendant's [sic] are liable for their unconstitutional actions
> prior to April of 2003, as set forth by the Plaintiff in his Complaint.
>
> [] The liability of the Defendant's [sic] also extends beyond the April
> of 2003 date, as the Defendant's [sic] have denied the Plaintiff treatment
> for his serious medical condition and need, several times since that date.
> While such denials changed qualitatively after April of 2003, from
> "Because of your age the hepatitis C won't cause you harm so there's no
> need to be treated", to "We cannot treat you because of your age", the
> Plaintiff is still injured thereby, and his Constitutional rights still violated.
> The difference is, for purposes of the statute of limitations, that the pre-
> April 2003 violations did not accrue until April of 2003, whereby the post-
> April 2003 violations accrued simultaneously with the post-April acts of
> the Defendant's, [sic] as the Plaintiff was then immediately aware of them.
> So even though the April 2003 date is pivotal for both time-periods related
> to Plaintiff's claims, in neither case does the Plaintiff need or seek to
> invoke the continued violation doctrine. . . .

(Docket No. 42 at 25-26) (footnotes omitted).

In their reply, the defendants note that Colorado applies the doctrine of equitable

tolling of the statute of limitations in limited situations in which either the defendant's

---

[3]The court does not know where the defendants have obtained the April 14,
2003, date.  According to the Certificate of Service attached to the Prisoner Complaint,
the plaintiff purportedly mailed that pleading on March 22, 2005, and it was received by
the court on March 23, 2003, and finally filed on March 29, 2003.

wrongful conduct prevented the plaintiff from asserting the claims in a timely manner or

truly exceptional circumstances prevented the plaintiff from filing the claim despite

diligent efforts.  (Docket No. 48 at 6-7) (citing Dean Whitter Reynolds, Inc. v. Hartman,

911 P.2d 1094, 1096-97 (Colo. 1996)).  The latter basis requires the plaintiff to make a

good faith effort to pursue any claims.  Id.  Defendants assert that:

> Plaintiff was aware that he was being denied treatment due to his
> age, and information concerning Hepatitis C was readily available to him
> during his entire incarceration. [See Response, at 5, Section I(2)(b)].
> Plaintiff has presented no truly exceptional circumstances that prevented
> him from filing his claims despite diligent efforts.  Accordingly, Plaintiff is
> precluded from any reliance on any events prior to April 14, 2003, to form
> the factual predicate of his 42 U.S.C. § 1983 claims against any
> Defendants and such claims must be dismissed.

(Docket No. 48 at 7).

"State statues of limitations applicable to general personal injury claims supply

the limitations periods for § 1983 claims . . . ."  Beck v. City of Muskogee Police Dep't,

195 F.3d 553, 557 (10th Cir. 1999).  Claims asserted under § 1983 are governed by

Colorado's two-year statute of limitations for personal injury actions.  § 13-80-102,

C.R.S.; Workman v. Jordan, 32 F.3d 475, 482 (10th Cir. 1994); Merrigan v. Affiliated

Bankshares of Colo., Inc., 775 F. Supp. 1408, 1411-12 (D. Colo. 1991).  Federal law,

rather than state law, however, determines when a claim accrues.  "The statute of

limitations begins to run when the plaintiff knows or has reason to know of the

existence and cause of injury which is the basis of his action. . . .  A Plaintiff has reason

to know of his injury when he should have discovered it through the exercise of

reasonable diligence."  Industrial Constructors Corp. v. United States Bureau of

16

Reclamation, 15 F.3d 963, 969 (10th Cir. 1994).

In this case, this court finds that some of plaintiff's claims, namely, those based on events occurring before March 22, 2003 (the date plaintiff mailed the Complaint),[4] are barred by the statute of limitations.  In his Prisoner Complaint plaintiff alleges that the defendants did not treat his Hepatitis C, that he continuously experienced the debilitating physical and metal effects of Hepatitis C in its active phase, and that he repeatedly asked for treatment, which was repeatedly denied, albeit for allegedly slightly different reasons related to his age as time passed.  Although plaintiff argues that he did not know the extent of his illness until he read the defendant's Protocol in April 2003, "[a] plaintiff need not know the full extent of his injuries before the statute of limitations begins to run."  Industrial Constructors Corp. v. United States Bureau of Reclamation, 15 F.3d at 969.

The moving defendants next assert that they are all entitled to qualified immunity from the plaintiff's Eighth Amendment claims.  When a defendant raises a qualified immunity defense, the plaintiff "bears the burden of showing that: (1) the defendants' actions violated a constitutional or statutory right; and (2) the right was clearly established and reasonable persons in the defendants' position would have known their conduct violated that right."  Cruz v. City of Laramie, Wyo., 239 F.3d 1183, 1187 (10th Cir. 2001).

"When confronted with a claim of qualified immunity, a court **must** ask first the

---

[4]Under the prison "mailbox rule," a prisoner's Complaint should be deemed "filed" at the moment of its delivery to prison authorities for forwarding to the District Court.  See Houston v. Lack, 487 U.S. 266 (1988).

following question: 'Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?'" Brosseau v. Haugen, 543 U.S. 194, 197 (2004) (emphasis added).  In this case, the moving defendants have essentially jumped over this first step by assuming for purposes of their motion that the plaintiff's allegations demonstrate that any of the defendants violated the Eighth Amendment.  Defendants instead focus their qualified immunity argument upon their contention that the plaintiff cannot prove any constitutional right allegedly violated by any of these individual defendants was clearly established for qualified immunity purposes.  Defendants state in a footnote that they:

> specifically reserve the right to contest the proposition the Plaintiff can establish any violation of the Eighth Amendment constitutional rights based on the treatment provided to the Plaintiff for his Hepatitis C against any of them during later proceedings in this matter.  Defendants do not address this issue in the instant Motion because the Defendants believe this Court can dispose of the all [sic] of the Plaintiff's claims without analyzing the issue of whether a constitutional violation occurred.

(Docket No. 29 at 10 n.3).

The Supreme Court, however, has instructed that "[a] court required to rule upon the qualified immunity issue **mus**t consider . . . this threshold question:  Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?  This **must** be the initial inquiry." Saucier v. Katz, 533 U.S. 194, 201 (2001) (emphasis added).  According to the Court, it is important that the court concentrate at the outset on the definition of the constitutional right and to determine whether, on the facts alleged, a constitutional violation could be found because:

18

> [i]n the course of determining whether a constitutional right was violated
> on the premises alleged, a court might find it necessary to set forth
> principles which will become the basis for a holding that a right is clearly
> established.  This is the process for the law's elaboration from case to
> case, and it is one reason for our **insisting** upon turning to the existence
> or nonexistence of a constitutional right as the first inquiry.  The law might
> be deprived of this explanation **were a court simply to skip ahead to
> the question whether the law clearly established that the [official's]
> conduct was unlawful in the circumstances of the case**.

Id. at 201 (emphasis added).

In Brosseau v. Haugen, decided in December 2004, the Court noted that they

had "no occasion in [that] case to reconsider [their] instruction in Saucier . . . that lower

courts decide the constitutional question prior to deciding the qualified immunity

question. . . ."  Brosseau, 543 U.S. at 198 n.3.  See Maestas v. Lujan, 351 F.3d 1001,

1007 (10th Cir. 2004) ("Order is important; we must first decide whether the plaintiff has

alleged a constitutional violation, and only then do we proceed to determine whether

the law was clearly established.").

Based upon the Supreme Court's instruction outlined above, and given the

defendants' failure to address the merits of the first step in the qualified immunity

analysis, it is recommended that the defendants' motion to dismiss, to the extent it

concerns qualified immunity, be denied without prejudice.

**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED** that the Plaintiff's Motion for Preliminary Injunction (Docket

No. 3) be denied without prejudice.  It is further

**RECOMMENDED** that  Defendant DeCesaro's Motion for Summary Judgment or

in the Alternative Motion to Dismiss Complaint (Docket No. 13) be granted.  It is further

19

**RECOMMENDED** that the Motion to Dismiss from Defendants Joseph Ortiz,

Barry Pardus, Chris Petrozzi, Don Lawson, Al Estep, Anita Bloor, Gary Watkins, Johns

Suthers, John Blood and Joseph Mcgarry (Docket No. 29) be granted in part and

denied in part.  More specifically, it is recommended that the motion be granted to the

extent that the court dismiss with prejudice all of the plaintiff's claims that are based

upon actions that allegedly occurred before March 22, 2003.  It is further recommended

that in all other respects the motion be denied without prejudice.

**NOTICE:  Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the**

**parties have ten (10) days after service of this recommendation to serve and file**

**written, specific objections to the above recommendation with the District Judge**

**assigned to the case.  The District Judge need not consider frivolous, conclusive,**

**or general objections.  A party's failure to file and serve such written, specific**

**objections waives *de novo* review of the recommendation by the District Judge,**

**Fed. R. Civ. P. 72(b), Thomas v. Arn, 474 U.S. 140, 148-53 (1985), and also waives**

**appellate review of both factual and legal questions.  Makin v. Colorado Dep't of**

**Corrections, 183 F.3d 1205, 1210 (10th Cir. 1999); Talley v. Hesse, 91 F.3d 1411,**

**1412-13 (10th Cir. 1996).**

Dated: March 1st, 2006          s/Michael J. Watanabe
        Denver, Colorado         Michael J. Watanabe
                                 United States Magistrate Judge