IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 05-cv-00574-WDM-MJW


JAMES A. TAYLOR,

     Plaintiff,

v.

JOE ORTIZ, CDOC, Current Executive Director,
MR. SUTTON, CDOC, Former Executive Director,
JOHN DOE, CDOC, Former Executive Director,
AL ESTEP, LCF Current Superintendent/Warden,
GARY WATKINS, LCF Former Superintendent,
MR. SOARES, LCF Former Superintendent,
JOSEPH MC GARRY, CDOC Chief Medical Officer,
BARRY PARDUS, CDOC Director of Medical Services,
DON LAWSON, CDOC Chief Pharmacy Officer,
JOHN H. BLOOR, M.D., Ph.D CDOC Hepatology Director,
JOHN DOE, LCF Current Clinic Team Leader,
MR. PETROZZI, LCF Former Clinic Team Leader,
ANITA BLOOR, M.D., LCF Primary Care Provider,
JOHN DOE, Colorado Access Medical Officer,
JOHN DOE, Access Correctional Care, Chf. Med. Officer, and
TONY DE CESARO, CDOC Step III Grievance Officer,

     Defendants.

---

## RECOMMENDATIONS ON
## PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION (Docket No. 83)
## and
## RENEWED MOTION TO DISMISS FROM DEFENDANTS JOSEPH ORTIZ, BARRY
## PARDUS, CHRIS PETROZZI, DON LAWSON, AL ESTEP, ANITA BLOOR, GARY
## WATKINS, JOHN SUTHERS, JOHN BLOOR AND JOSEPH McGARRY
## (Docket No. 69)

---

**MICHAEL J. WATANABE**
**United States Magistrate Judge**

2

This case is before this court pursuant to an Order of Reference to Magistrate Judge issued by District Judge Walker D. Miller on May 26, 2005 (Docket No. 15).

The pro se incarcerated plaintiff is 77 years old.  Named as defendants in this action are the current and former Executive Directors of the Colorado Department of Corrections ("CDOC") (defendants Ortiz and Sutton); the current and two former superintendents of Limon Correctional Facility ("LCF"), where the plaintiff is housed (defendants Estep, Watkins, and Soares); the CDOC Chief Medical Officer (defendant McGarry); the CDOC Director of Medical Services (defendant Pardus); the CDOC Chief Pharmacy Officer (defendant Lawson); the CDOC Hepatology Director (defendant John Bloor); the LCF former clinic team leader (defendant Petrozzi); the LCF primary care provider (defendant Anita Bloor, M.D.); and the CDOC Step III Grievance Officer (defendant DeCesaro); plus four John Does.[1]  Plaintiff is suing each defendant "as an individual acting under color of state law."  (Compl. At 9; Request for Relief).

In the lengthy Prisoner Complaint, which is not a model of clarity, plaintiff raises the following three claims:  (1) a violation of the Eighth Amendment for failure to provide medical treatment for the plaintiff's Hepatitis C; (2) a violation of the Fourteenth Amendment due to the defendants denying treatment for the plaintiff's Hepatitis C based upon the plaintiff's age, which deprived him of his constitutional right to due process of law and equal protection; and (3) a violation of the Fourteenth Amendment due to the defendants denying treatment of the plaintiff's Hepatitis C based upon the

---

[1] Plaintiff's claims against defendant CDOC Consultant Specialist Gottula were dismissed pursuant to Judge Miller's Order of March 31, 2006 (Docket No. 71).  Taylor v. Ortiz, 2006 WL 954913 (D. Colo. Mar. 31, 2006).

defendants' construction and implementation of treatment protocol which is vague and arbitrary.

More specifically, plaintiff's allegations in his pleading including the following. He was diagnosed as having Hepatitis C in 1997, when he was 66 years old, and he has continuously experienced the debilitating physical and metal effects of Hepatitis C in its active phase.  When he was informed of the diagnosis, he asked if there was any treatment available and if so, that he be given it.  "The Defendants answered that yes, there was a treatment which included a liver biopsy.  However, Defendants told Plaintiff that because of his age (66 at the time), that there was no need for treating him, because he would most likely die of a heart attack or some other cause; that the hepatitis C would not cause him any major harm."  (Compl. At 4-4a).

Plaintiff's symptoms (itching, fatigue, and edema) continued, and he was told to get more rest, and he was given different oral medications for the itching.  In 1999-2000, his symptoms continued, and then in the latter part of 2002, they began to increase, and he also had more fluid retention in his lower legs, ankles, and feet, swelling in his upper stomach area accompanied by a deep-seated tenderness or pain, and his urine changed color and had a foul odor.  (Compl. At 5a.).  Plaintiff continued to inquire about treatment, but each time defendants responded that it would do no good and that he was too old.

Blood samples were taken twice a year to monitor the Hepatitis C, and plaintiff was told the results would be used in order to help defendants study and track the disease.  Usually when the blood draws were done, plaintiff would ask about whether

4

he should be given treatment, and each time the response was that he did not need treatment because of his age.

Defendants subsequently passed out copies of their April 2003 Hepatitis C Treatment Protocol, at which time plaintiff saw that the symptoms he had been experiencing exactly matched what was set forth in the Protocol and that his symptoms designated him as being in the "highest risk" category for developing fatal liver cancer or end-stage liver disease.  Plaintiff thus again asked defendants for treatment, but this time he was told he was "too old" to be given any of the treatment.  Plaintiff contends that the Protocol is vague and arbitrary with regard to how it is written regarding references to age.

Plaintiff believes the defendants must have known from the beginning (1997-98) that he was in the high-risk category.  Upon his first review of his LCF medical file on December 28, 2004, he saw for the first time that he was diagnosed with cirrhosis of the liver as far back as September 11, 2001.

Plaintiff seeks the following relief:  immediate medical treatment for his Hepatitis C, $250,000 in compensatory damages, and $500,000 in punitive damages.  (Compl. At 9, Request for Relief).

In a Report and Recommendation issued on March 1, 2006 (Docket No. 60), as amended (Docket No. 62), this court recommended that the Plaintiff's Motion for Preliminary Injunction (Docket No. 3) be denied without prejudice in view of the fact that the plaintiff had not provided notice of his motion to any of the named defendants, that Defendant DeCesaro's Motion for Summary Judgment or in the Alternative Motion to

5

Dismiss Complaint (Docket No. 13) be granted, and that the Motion to Dismiss from

Defendants Joseph Ortiz, Barry Pardus, Chris Petrozzi, Don Lawson, Al Estep, Anita

Bloor, Gary Watkins, Johns Suthers, John Blood and Joseph Mcgarry (Docket No. 29)

be granted in part and denied in part.  More specifically, it was recommended that the

motion be granted to the extent that the court dismiss with prejudice all of the plaintiff's

claims that are based upon actions that allegedly occurred before March 22, 2003.  It

was further recommended that in all other respects the motion be denied without

prejudice.  (Docket No. 60).

By Order filed August 10, 2006, however, Judge Miller did not accept that

recommendation, instead finding that the action should be dismissed without prejudice,

sua sponte, pursuant to the Prison Litigation Reform Act of 2000's exhaustion

requirements.  (Docket No. 86).  All pending motions in this case were thus denied as

moot.  (Docket No. 86).

Nevertheless, on January 22, 2007, the United States Supreme Court abrogated

the Tenth Circuit precedent upon which the August 10, 2006, Order relied.  Jones v.

Bock, 127 S. Ct. 910 (2007).  Therefore, by Order filed on February 1, 2007, Judge

Miller vacated his August 10, 2006, Order.  (Docket No. 90).  This court's

recommendation issued on March 1, 2006; plaintiff's motion for a preliminary injunction

(Docket No. 3); defendant Tony DeCesaro's motion for summary judgment or in the

alternative motion to dismiss (Docket No. 13); the motion to dismiss from defendant

Joseph Ortiz, Barry Pardus, Chris Petrozzi, Don Lawson, Al Estep, Anita Bloor, Gary

Watkins, John Suthers, John Bloor, and Joseph McGarry (Docket No. 29); the renewed

6

motion to dismiss from defendants Joseph Ortiz, Barry Pardus, Chris Petrozzi, Don Lawson, Al Estep, Anita Bloor, Gary Watkins, John Suthers, John Bloor, and Joseph McGarry (Docket No. 69); and plaintiff's motion for a preliminary injunction (Docket No. 83) were reinstated.  Now before the court for report and recommendation are the latter two motions.  The other motions are addressed in this court's previous Recommendation (Docket No. 60).

The court has considered the motions, the Plaintiff's Updated Information Concerning Preliminary Injunction (Docket No. 92), and defendants' Response to the Motion for Preliminary Injunction (Docket No. 85).  Plaintiff has not filed a response to the defendants' renewed motion to dismiss.  The court has also considered the court file and applicable Federal Rules of Civil Procedure and case law.  The court now being fully informed makes the following findings, conclusions of law, and recommendations.

A party seeking a preliminary injunction must establish that he (1) "will suffer irreparable injury unless the injunction issues; (2) the threatened injury . . . outweighs whatever damage the proposed injunction may cause the opposing party; (3) the injunction, if issued, would not be adverse to the public interest; and (4) there is a substantial likelihood [of success] on the merits."  <u>Summum v. Pleasant Grove City</u>, 483 F.3d 1044, 1048 (10th Cir. 2007).  The standard is even higher were the movant seeks a mandatory preliminary injunction that alters that status quo by commanding some positive act.  In such case, the movant must "make[] a strong showing both regard to the likelihood of success on the merits and with regard to the balance of harms."  <u>Id.</u>

7

For purposes of a motion to dismiss, the court must accept all factual allegations in the complaint as true and resolve all reasonable inferences in plaintiff's favor.  Morse v. Regents of the Univ. of Colo., 154 F.3d 1124, 1126 (10th Cir. 1998); Seamons v. Snow, 84 F.3d 1226, 1231-32 (10th Cir. 1996).  A case should not be dismissed for failure to state a claim unless the court determines beyond doubt that plaintiff can prove no set of facts which entitles him to relief.  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

Since the plaintiff is not an attorney, his pleadings have been construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers.  See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing Haines v. Kerner, 404 U.S. 519, 520-21 (1972)).  Therefore, "if the court can reasonably read the pleadings to state a claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements. . . .  At the same time, . . . it is [not] the proper function of the district court to assume the role of advocate for the pro se litigant." Id.

The moving defendants assert that they are all entitled to qualified immunity from the plaintiff's Eighth Amendment claims.  When a defendant raises a qualified immunity defense, the plaintiff "bears the burden of showing that: (1) the defendants' actions violated a constitutional or statutory right; and (2) the right was clearly established and reasonable persons in the defendants' position would have known their conduct violated that right." Cruz v. City of Laramie, Wyo., 239 F.3d 1183, 1187 (10th Cir.

8

2001).

 "When confronted with a claim of qualified immunity, a court **must** ask first the following question: 'Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?'" Brosseau v. Haugen, 543 U.S. 194, 197 (2004) (emphasis added).

In this case, in their previous motion to dismiss, the moving defendants essentially jumped over this first step by assuming for purposes of their motion that the plaintiff's allegations demonstrated that the defendants violated the Eighth Amendment. Defendants instead focused their qualified immunity argument upon their contention that the plaintiff cannot prove that any constitutional right allegedly violated by any of these individual defendants was clearly established for qualified immunity purposes.

The Supreme Court, however, has instructed that "[a] court required to rule upon the qualified immunity issue **must** consider . . . this threshold question:  Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?  This **must** be the initial inquiry." Saucier v. Katz, 533 U.S. 194, 201 (2001) (emphasis added).  According to the Court, it is important that the court concentrate at the outset on the definition of the constitutional right and to determine whether, on the facts alleged, a constitutional violation could be found because:

> [i]n the course of determining whether a constitutional right was violated on the premises alleged, a court might find it necessary to set forth principles which will become the basis for a holding that a right is clearly established.  This is the process for the law's elaboration from case to case, and it is one reason for our **insisting** upon turning to the existence

or nonexistence of a constitutional right as the first inquiry.  The law might be deprived of this explanation **were a court simply to skip ahead to the question whether the law clearly established that the [official's] conduct was unlawful in the circumstances of the case**.

Id. at 201 (emphasis added).  In Brosseau v. Haugen, decided in December 2004, the Court noted that they had "no occasion in [that] case to reconsider [their] instruction in Saucier . . . that lower courts decide the constitutional question prior to deciding the qualified immunity question. . . ."  Brosseau, 543 U.S. at 198 n.3.  See Maestas v. Lujan, 351 F.3d 1001, 1007 (10th Cir. 2004) ("Order is important; we must first decide whether the plaintiff has alleged a constitutional violation, and only then do we proceed to determine whether the law was clearly established.").

In this case, this court finds that taken in the light most favorable to the plaintiff, the facts alleged do not show that defendants' conduct violated a constitutional right.  Therefore, not only are the defendants entitled to qualified immunity with respect to the plaintiff's claims for monetary relief, but since the plaintiff has failed to state a claim upon which relief may be granted, his claims should be dismissed with prejudice, and his motion for injunctive relief should be denied.

Prisoners have an Eighth Amendment right to adequate medical care.  As stated by the U. S. Supreme Court:

> elementary principles establish the government's obligation to provide medical care for those whom it is punishing by incarceration.  An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met.  In the worst cases, such a failure may actually produce physical "torture or a lingering death," . . . the evils of most immediate concern to the drafters of the Amendment.  In less serious cases, denial of medical care may result in pain and suffering which no one suggests would serve any penological purpose. . . .  The

10

infliction of such unnecessary suffering is inconsistent with contemporary
standards of decency . . . .

Estelle v. Gamble, 429 U.S. 97, 103 (1976) (citations omitted).  "[I]n cases where

prisoners allege that inadequate or delayed medical care violated their Eighth

Amendment rights, it has been established that '[p]rison officials violate the Eighth

Amendment [only] when they are deliberately indifferent to the serious needs of

prisoners in their custody.'"  Oxendine v. Kaplan, 241 F.3d 1272, 1276 (10th Cir. 2001)

(citations omitted).  Such claims "thus involve both an objective and a subjective

component, such that [the court] must determine both 'whether the deprivation is

sufficiently serious' and 'whether the [government] official acted with a sufficiently

capable state of mind.'"  Id.

    This court finds that the plaintiff has not stated an Eighth Amendment claim with

respect to the denial of his request for combination drug therapy for his hepatitis C.

Plaintiff has not shown that he meets all of the Colorado Department of Corrections'

criteria for this type of treatment, namely, the current age requirement that he be under

the age of 65 with at least 20 years of life expectancy.   Plaintiff's disagreement with the

requirement that such criteria be met before such treatment is authorized does not

state a claim of constitutional magnitude.   See Bartlett v. Correctional Med. Servs.,

Inc., 1997 WL 572834 (10th Cir. Sept. 16, 1997) (Plaintiff complained about, inter alia,

defendants' failure to treat his hepatitis C with Interferon Alpha.  The Tenth Circuit

stated that "the complaint shows that this is a quarrel between [plaintiff] and multiple

doctors regarding the appropriate handling of his medical condition.  As the district

11

court correctly noted, a difference of over medical treatment does not state an Eighth Amendment claim of deliberate indifference."); Handy v. Price, 996 F.2d 1064, 1067-68 (10th Cir. 1993) (Quarrel with the doctor as to treatment for hepatitis does not raise a constitutional issue.); McKenna v. Wright, 2002 WL 338375 (S.D.N.Y. Mar. 4, 2002) (and cases cited therein) ("[W]hile Plaintiff may have engaged in his own medical research, determined for himself that a different course of treatment would be appropriate, . . . that their treatment decision with respect to his Hepatitis C is therefore incorrect, and that the defendant physicians should have permitted him a follow-up consultation with a specialist, these allegations do not rise to the level of Eighth Amendment violations."); Christy v. Robinson, 216 F. Supp.2d 398 (D. N.J. 2002) (No deliberate indifference by defendants' denial of inmate's request for treatment of his hepatitis C with interferon/ribavirin combination therapy.  "The Constitution does not guarantee that every prisoner will receive every type of treatment he desires, or even may need.  While the standard protocol for treating hepatitis C may be evolving, nothing in the record suggests that interferon/ribavirin is necessary for proper treatment and there is no evidence that the course of treatment adopted by Defendants deviates from the standard medical practice.  Prison health officials are given great latitude in forming treatment plans and differences in opinions between prisoners and doctors, as a matter of law, do not amount to a constitutional violation."); Gresh v. Berks Co., 2002 WL 1635394 (E.D. Pa. 2002) (Even if . . . [plaintiff's] belief that he deserved the combination therapy was grounded in fact, he has provided no evidence that defendants believed he was a suitable candidate for the combination therapy and

12

nevertheless denied it to him because of expense or otherwise. . . .  Without such

evidence, [plaintiff's] claim fails as a matter of law.  No reasonable jury could conclude

that the defendants' failure to provide [plaintiff] combination therapy was deliberately

indifferent to his medical needs . . . ."); <u>Dias v. Vose</u>, 865 F. Supp. 53 (D. Mass. 1994)

("[Plaintiff's] actual complaint appears to be that [his facility doctor] refused to authorize

immediate treatment with Interferon, a highly experimental drug with significant

potential side effects. . . .  While [plaintiff] might have preferred a different course of

treatment than the one chosen by [the doctor], frustration of a prisoner's treatment

wishes is not a matter of constitutional concern."), <u>aff'd</u>, 50 F.3d 1 (1st Cir. 1995).  <u>See</u>

<u>also</u> <u>Hawley v. Evans</u>, 716 F. Supp. 601 (N.D. Ga. 1989) (HIV-positive prisoners

requested a wide variety of drugs and medical treatments.  Court stated that "[a]s long

as Georgia's prison system is abiding by reasonable medical practices, the issue of

whether to permit a prisoner to be treated with experimental drugs . . . is the 'exclusive

prerogative' of the state of Georgia. . . .  It should also be noted that a prisoner's claim

of inadequate medical treatment which reflects a mere disagreement with prison

authorities over proper medical treatment . . . does not state a claim of constitutional

magnitude.").

       Here, the plaintiff's complaint, including his attachments, show that he is not

being denied medical care for his ailments.  Rather, there is an on-going quarrel

between the plaintiff and the correctional medical providers regarding the proper

handling of his condition at his advanced age.  A difference of medical treatment,

however, does not state an Eighth Amendment claim of deliberate indifference.

13

Furthermore, the Department of Corrections' guidelines and policies concerning treatment of inmate with hepatitis do not confer a constitutional right under the Fourteenth Amendment. See Bartlett v. Correctional Medical Service, Inc., 1997 WL 572834 (10th Cir. Sept. 16, 1997) (citing Sandin v. Conner, 515 U.S. (1995)). In addition, plaintiff has not shown that others similarly situated have been treated differently.

**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED** that the Renewed Motion to Dismiss from Defendants Joseph Ortiz, Barry Pardus, Chris Petrozzi, Don Lawson, Al Estep, Anita Bloor, Gary Watkins, John Suthers, John Bloor and Joseph McGarry (Docket No. 69) be granted. It is further

**RECOMMENDED** that the Plaintiff's Motion for Preliminary Injunction (Docket No. 83) be denied.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have ten (10) days after service of this recommendation to serve and file written, specific objections to the above recommendation with the District Judge assigned to the case. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives _de novo_ review of the recommendation by the District Judge, Fed. R. Civ. P. 72(b), Thomas v. Arn, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions. Makin v. Colorado Dep't of Corrections, 183 F.3d 1205, 1210 (10th Cir. 1999); Talley v. Hesse, 91 F.3d 1411,**

14

**1412-13 (10th Cir. 1996).**


Dated: July 3, 2007                           s/Michael J. Watanabe
      Denver, Colorado                        Michael J. Watanabe
                                   United States Magistrate Judge