IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 05-cv-00574-PAB-MJW

JAMES A. TAYLOR,

      Plaintiff,

v.

JOE ORTIZ, CDOC, Current Executive Director,
MR. SUTTON, CDOC, Former Executive Director,
AL ESTEP, LCF Current Superintendent/Warden,
GARY WATKINS, LCF Former Superintendent,
MR. SOARES, LCF Former Superintendent,
JOSEPH MC GARRY, CDOC Chief Medical Officer,
BARRY PARDUS, CDOC Director of Medical Services,
DON LAWSON, CDOC Chief Pharmacy Officer,
JOHN H. BLOOR, M.D., Ph.D CDOC Hepatology Director,
JOHN DOE, LCF Current Clinic Team Leader,
MR. PETROZZI, LCF Former Clinic Team Leader, and
ANITA BLOOR, M.D., LCF Primary Care Provider,

      Defendants.

---

**RECOMMENDATIONS ON
PLAINTIFF'S REQUEST FOR PERMISSION TO REVISIT
EIGHTH AMENDMENT ISSUE (Docket No. 178)
and
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Docket No. 161)**

---

**MICHAEL J. WATANABE
United States Magistrate Judge**

      This case is before this court pursuant to an Order of Reference to Magistrate

Judge issued by Judge Walker D. Miller on May 26, 2005.  (Docket No. 15).  The case

was subsequently reassigned in October 2008 to Judge Philip A. Brimmer upon his

appointment.  (Docket No. 137).

2

The pro se incarcerated plaintiff is presently 80 years old.  The remaining named defendants in this action are the current and former Executive Directors of the Colorado Department of Corrections ("CDOC") (defendants Ortiz and Sutton); the current and two former superintendents of Limon Correctional Facility ("LCF"), where the plaintiff is housed (defendants Estep, Watkins, and Soares); the CDOC Chief Medical Officer (defendant McGarry); the CDOC Director of Medical Services (defendant Pardus); the CDOC Chief Pharmacy Officer (defendant Lawson); the CDOC Hepatology Director (defendant John Bloor); the former LCF clinic team leader (defendant Petrozzi); the LCF primary care provider (defendant Anita Bloor, M.D.); plus four John Does who remain unidentified notwithstanding discovery being closed.  Plaintiff is suing each defendant "as an individual acting under color of state law."  (Compl. at 9; Request for Relief).

In the lengthy Prisoner Complaint, which is not a model of clarity, plaintiff raised the following three claims:  (1) a violation of the Eighth Amendment for failure to provide medical treatment for the plaintiff's Hepatitis C; (2) a violation of the Fourteenth Amendment due to the defendants denying treatment for the plaintiff's Hepatitis C based upon the plaintiff's age, which deprived him of his constitutional right to due process of law and equal protection; and (3) a violation of the Fourteenth Amendment due to the defendants denying treatment of the plaintiff's Hepatitis C based upon the defendants' construction and implementation of treatment protocol which is vague and arbitrary.   At this time, as discussed below, only claims two and three remain.

More specifically, plaintiff's allegations in his pleading include the following.  He was diagnosed as having Hepatitis C in 1997, when he was 66 years old, and he has continuously experienced the debilitating physical and mental effects of Hepatitis C in its

3

active phase.  When he was informed of the diagnosis, he asked if there was any

treatment available and if so, that he be given it.  "The Defendants answered that yes,

there was a treatment which included a liver biopsy.  However, Defendants told Plaintiff

that because of his age (66 at the time), that there was no need for treating him,

because he would most likely die of a heart attack or some other cause; that the

hepatitis C would not cause him any major harm."  (Compl. at 4-4a).

Plaintiff's symptoms (itching, fatigue, and edema) continued, and he was told to

get more rest and was given different oral medications for the itching.  In 1999-2000, his

symptoms continued.  In the latter part of 2002, they began to increase, and he also had

more fluid retention in his lower legs, ankles, and feet, swelling in his upper stomach

area accompanied by a deep-seated tenderness or pain, and a change in the color and

odor of his urine.  (Compl. at 5a).  Plaintiff continued to inquire about treatment, but

each time defendants responded that it would do no good and that he was too old.

Blood samples were taken twice a year to monitor the Hepatitis C, and plaintiff

was told the results would be used in order to help defendants study and track the

disease.  Usually when the blood draws were done, plaintiff would ask about whether he

should be given treatment, and each time the response was that he did not need

treatment because of his age.

Defendants subsequently distributed copies of their April 2003 Hepatitis C

Treatment Protocol, at which time plaintiff saw that the symptoms he had been

experiencing exactly matched what was set forth in the Protocol and designated him as

being in the "highest risk" category for developing fatal liver cancer or end-stage liver

disease.  Plaintiff thus again asked defendants for treatment, but this time he was told

he was "too old" to be given any of the treatment.  Plaintiff contends that the Protocol is vague and arbitrary with regard to how it is written regarding references to age.

Plaintiff believes the defendants must have known from the beginning (1997-98) that he was in the high-risk category.  Upon his first review of his LCF medical file on December 28, 2004, he saw for the first time that he was diagnosed with cirrhosis of the liver as far back as September 11, 2001.

Plaintiff seeks the following relief:  immediate medical treatment for his Hepatitis C, $250,000 in compensatory damages, and $500,000 in punitive damages.  (Compl. at 9, Request for Relief).

In a Report and Recommendation issued on March 1, 2006 (Docket No. 60), as amended (Docket No. 62), this court recommended that the Plaintiff's Motion for Preliminary Injunction (Docket No. 3) be denied without prejudice in view of the fact that the plaintiff had not provided notice of his motion to any of the named defendants, that Defendant DeCesaro's Motion for Summary Judgment or in the Alternative Motion to Dismiss Complaint (Docket No. 13) be granted, and that the Motion to Dismiss from Defendants Joseph Ortiz, Barry Pardus, Chris Petrozzi, Don Lawson, Al Estep, Anita Bloor, Gary Watkins, Johns Suthers, John Blood and Joseph McGarry (Docket No. 29) be granted in part and denied in part.  More specifically, it was recommended that the motion be granted to the extent that the court dismiss with prejudice all of the plaintiff's claims that are based upon actions that allegedly occurred before March 22, 2003.  It was further recommended that in all other respects the motion be denied without prejudice.  (Docket No. 60).

By Order filed August 10, 2006, however, Judge Miller did not accept that recommendation, instead finding that the action should be dismissed without prejudice, *sua sponte*, pursuant to the exhaustion requirements of the Prison Litigation Reform Act of 2000.  (Docket No. 86).  All pending motions in this case were thus denied as moot. (Docket No. 86).

Nevertheless, on January 22, 2007, the United States Supreme Court abrogated the Tenth Circuit precedent upon which the August 10, 2006, Order relied.  Jones v. Bock, 549 U.S. 199 (2007).  Therefore, by Order filed on February 1, 2007, Judge Miller vacated his August 10, 2006, Order and reinstated the following:  this court's report and recommendation issued on March 1, 2006; plaintiff's motion for a preliminary injunction (Docket No. 3); defendant Tony DeCesaro's motion for summary judgment or in the alternative motion to dismiss (Docket No. 13); the motion to dismiss from defendants Joseph Ortiz, Barry Pardus, Chris Petrozzi, Don Lawson, Al Estep, Anita Bloor, Gary Watkins, John Suthers, John Bloor, and Joseph McGarry (Docket No. 29); the renewed motion to dismiss from defendants Joseph Ortiz, Barry Pardus, Chris Petrozzi, Don Lawson, Al Estep, Anita Bloor, Gary Watkins, John Suthers, John Bloor, and Joseph McGarry (Docket No. 69); and plaintiff's motion for a preliminary injunction (Docket No. 83).  (Docket No. 90).

On July 3, 2007, this court issued another report and recommendation (Docket No. 93), recommending that the plaintiff's motion for preliminary injunction (Docket No. 83) be denied and that the renewed motion to dismiss from defendants Joseph Ortiz, Barry Pardus, Chris Petrozzi, Don Lawson, Al Estep, Anita Bloor, Gary Watkins, John Suthers, John Bloor, and Joseph McGarry (Docket No. 69) be granted.

6

Thereafter, in an Order on Recommendations of Magistrate Judge (Docket No. 103), Judge Miller, *inter alia*, accepted the recommendations in part, denied the motion to dismiss (Docket No. 29) in part and denied in part without prejudice, granted the renewed motion to dismiss (Docket No. 69), and dismissed all claims against defendant DeCesaro with prejudice.  In addition, Judge Miller ordered that the "Plaintiff's Eighth Amendment claim against these defendants is dismissed with prejudice.  Plaintiff's claims, to the extent they rely on conduct occurring before March 22, 2003, are not necessarily barred by the statute of limitations.  Plaintiff's claims for violation of his due process and equal protection rights remain pending."  (Docket No. 103 at  14); Taylor v. Ortiz, 2007 WL 2746746 (D. Colo. Sept. 19, 2007).

Subsequently, this court granted Plaintiff's Motion for Appointment of Counsel to the extent that the Clerk of the Court was directed to make a good faith effort to try to secure pro bono counsel for the plaintiff.  (Docket No. 123).  To date, however, such pro bono counsel has not been secured.  In addition, a Scheduling Conference was conducted (Docket No. 132), and a Scheduling Order was entered by this court. Discovery has closed.

Now before the court for a report and recommendation are two motions, namely, Defendants' Motion for Summary Judgment, which was filed on June 25, 2009 (Docket No. 161), and Plaintiff's Request for Permission to Revisit Eighth Amendment Issue, which was filed on November 5, 2009 (Docket No. 178).  Without seeking an extension of time, plaintiff filed a very untimely response to the summary judgment motion on September 2, 2009 (Docket No. 171), and defendants timely filed a reply (Docket No. 175).  Plaintiff subsequently filed affidavits in support of his claims.  (Docket No. 176).

Defendants also filed a response to Plaintiff's Request for Permission to Revisit Eighth

Amendment Issue (Docket No. 181), and plaintiff filed a reply (Docket No. 182). The

court has considered all of these motion papers and applicable Federal Rules of Civil

Procedure and case law. In addition, the court has taken judicial notice of the court's

file. The court now being fully informed makes the following findings, conclusions of

law, and recommendations.

Since the plaintiff is not an attorney, his pleadings have been construed liberally

and held to a less stringent standard than formal pleadings drafted by lawyers. See Hall

v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing Haines v. Kerner, 404 U.S. 519,

520-21 (1972)). Therefore, "if the court can reasonably read the pleadings to state a

claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to

cite proper authority, his confusion of various legal theories, his poor syntax and

sentence construction, or his unfamiliarity with pleading requirements. . . . At the same

time, . . . it is [not] the proper function of the district court to assume the role of advocate

for the pro se litigant." Id.

## PLAINTIFF'S MOTION TO REVISIT EIGHTH AMENDMENT ISSUE

In the Order on Recommendations of Magistrate Judge (Docket No. 103), Judge

Miller agreed that plaintiff's Eighth Amendment claim should be dismissed. Taylor v.

Ortiz, 2007 WL 2746746, *4-5 (D. Colo. Sept. 19, 2007). More than two years after that

ruling was issued, plaintiff moved for permission to revisit the Eighth Amendment issue

on the following grounds: (1) the court misstated crucial facts, (2) Judge Miller's final

justification was based on an erroneous statement of fact, (3) Judge Miller's decision

was based on a misinterpretation of the law, and (4) the Eighth Amendment claim is

inextricably joined to plaintiff's Fourteenth Amendment claims. Based upon the "law of

the case doctrine," this court recommends that plaintiff's motion to revisit Judge Miller's

dismissal of the Eighth Amendment claims be denied. "In general, the law of the case

doctrine provides that when a court decides upon a rule of law, that decision to govern

the same issues in subsequent stages in the same case." Homans v. City of

Alburquerque, 366 F.3d 900, 904 (10th Cir. 2004) (quotation omitted).

> The law of the case doctrine is "a restriction self-imposed by the courts in
> the interest of judicial efficiency. It is a rule based on sound public policy
> that litigation should come to an end and is designed to bring about a
> quick resolution of disputes by preventing continued reargument of issues
> already decided." Fox v. Mazda Corp. of America, 868 F.2d 1190, 1194
> (10th Cir. 1989) (citations omitted). The law of the case doctrine
> "encompasses a court's explicit decisions, as well as those issues decided
> by necessary implication." Williamsburg Wax Museum v. Historic Figures,
> Inc., 810 F.2d 243 (D.C. Cir. 1987) (citations omitted).

Anthony v. Baker, 955 F.2d 1395, 1397 n.1 (10th Cir. 1992). Plaintiff did not timely move

for any relief from Judge Miller's Order and instead waited over two years to move to

"revisit" Judge Miller's ruling. There has been no showing that the prior ruling was

clearly erroneous and would work a manifest injustice. See Arizona v. California, 460

U.S. 605, 618 n.8 (1983). Such motion should be denied.

Even if the Eighth Amendment claim should be revisited, this court recommends

for the same reasons stated in this court's prior rulings that the claim be dismissed.

Plaintiff's Complaint, including his attachments, shows that there is a long-standing, on-

going quarrel between the plaintiff and the correctional medical providers regarding the

proper handling of his condition at his advanced age. Such a difference of opinion,

however, does not state an Eighth Amendment claim of deliberate indifference. See

Bartlett v. Correctional Med. Servs., Inc., 1997 WL 572834 (10th Cir. Sept. 16, 1997)

(Plaintiff complained about, inter alia, defendants' failure to treat his hepatitis C with

Interferon Alpha.  The Tenth Circuit stated that "the complaint shows that this is a quarrel

between [plaintiff] and multiple doctors regarding the appropriate handling of his medical

condition.  As the district court correctly noted, a difference of over medical treatment

does not state an Eighth Amendment claim of deliberate indifference."); Handy v. Price,

996 F.2d 1064, 1067-68 (10th Cir. 1993) (Quarrel with the doctor as to treatment for

hepatitis does not raise a constitutional issue.); McKenna v. Wright, 2002 WL 338375

(S.D.N.Y. Mar. 4, 2002) (and cases cited therein) ("[W]hile Plaintiff may have engaged in

his own medical research, determined for himself that a different course of treatment

would be appropriate, . . . that their treatment decision with respect to his Hepatitis C is

therefore incorrect, and that the defendant physicians should have permitted him a

follow-up consultation with a specialist, these allegations do not rise to the level of Eighth

Amendment violations."); Christy v. Robinson, 216 F. Supp.2d 398 (D. N.J. 2002) (No

deliberate indifference by defendants' denial of inmate's request for treatment of his

hepatitis C with interferon/ribavirin combination therapy.  "The Constitution does not

guarantee that every prisoner will receive every type of treatment he desires, or even

may need.  While the standard protocol for treating hepatitis C may be evolving, nothing

in the record suggests that interferon/ribavirin is necessary for proper treatment and

there is no evidence that the course of treatment adopted by Defendants deviates from

the standard medical practice.  Prison health officials are given great latitude in forming

treatment plans and differences in opinions between prisoners and doctors, as a matter

of law, do not amount to a constitutional violation."); Gresh v. Berks Co., 2002 WL

10

1635394 (E.D. Pa. 2002) (Even if . . . [plaintiff's] belief that he deserved the combination therapy was grounded in fact, he has provided no evidence that defendants believed he was a suitable candidate for the combination therapy and nevertheless denied it to him because of expense or otherwise. . . .  Without such evidence, [plaintiff's] claim fails as a matter of law.  No reasonable jury could conclude that the defendants' failure to provide [plaintiff] combination therapy was deliberately indifferent to his medical needs . . . .");

Dias v. Vose, 865 F. Supp. 53 (D. Mass. 1994) ("[Plaintiff's] actual complaint appears to be that [his facility doctor] refused to authorize immediate treatment with Interferon, a highly experimental drug with significant potential side effects. . . .  While [plaintiff] might have preferred a different course of treatment than the one chosen by [the doctor], frustration of a prisoner's treatment wishes is not a matter of constitutional concern."), aff'd, 50 F.3d 1 (1st Cir. 1995).  See also Hawley v. Evans, 716 F. Supp. 601 (N.D. Ga. 1989) (HIV-positive prisoners requested a wide variety of drugs and medical treatments. Court stated that "[a]s long as Georgia's prison system is abiding by reasonable medical practices, the issue of whether to permit a prisoner to be treated with experimental drugs . . . is the 'exclusive prerogative' of the state of Georgia. . . .  It should also be noted that a prisoner's claim of inadequate medical treatment which reflects a mere disagreement with prison authorities over proper medical treatment . . . does not state a claim of constitutional magnitude.").

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants move for summary judgment on the following grounds:  they are entitled to qualified immunity from plaintiff's remaining claims; plaintiff has failed to demonstrate that any defendant violated any of his clearly-established constitutional

rights; defendants Ortiz, Pardus, Petrozzi, Lawson, Estep, Watkins, Suthers (incorrectly

identified in the caption as "Mr. Sutton"), John Bloor, and McGarry did not personally

participate in plaintiff's treatment; defendant Anita Bloor did not act with deliberate

indifference; and plaintiff has failed to establish any equal protection claim or due

process violation.

Rule 56(c)(2) provides that summary judgment shall be granted "if the pleadings,

the discovery and disclosure materials on file, and any affidavits show that there is no

genuine issue as to any material fact and that the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(c)(2). "A party seeking summary judgment bears the

initial responsibility of informing the district court of the basis for its motion, and

identifying those portions of the pleadings, depositions, interrogatories, and admissions

on file together with affidavits, if any, which it believes demonstrate the absence of

genuine issues for trial." Robertson v. Board of County Comm'rs of the County of

Morgan, 78 F. Supp.2d 1142, 1146 (D. Colo. 1999) (citing Celotex Corp. v. Catrett, 477

U.S. 317, 323 (1986); Mares v. ConAgra Poultry Co., 971 F.2d 492, 494 (10th Cir.

1992)). "Once a properly supported summary judgment motion is made, the opposing

party may not rest on the allegations contained in the complaint, but must respond with

specific facts showing the existence of a genuine factual issue to be tried. . . .  These

facts may be shown 'by any of the kinds of evidentiary materials listed in Rule 56(c),

except the mere pleadings by themselves.'"  Southway v. Central Bank of Nigeria, 149 F.

Supp.2d 1268, 1273 (D. Colo. 2001), aff'd, 328 F.3d 1267 (10th Cir. 2003).

"Summary judgment is also appropriate when the court concludes that no

reasonable juror could find for the non-moving party based on the evidence presented in

the motion and response." Id.  "The operative inquiry is whether, based on all

documents submitted, reasonable jurors could find by a preponderance of the evidence

that the plaintiff is entitled to a verdict. . . .  Unsupported allegations without 'any

significant probative evidence tending to support the complaint' are insufficient . . . as are

conclusory assertions that factual disputes exist." Id.; Robertson, 78 F. Supp.2d at 1146

(citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); quoting White v. York

Int'l Corp., 45 F.3d 357, 360 (10th Cir. 1995)).  "Evidence presented must be based on

more than 'mere speculation, conjecture, or surmise' to defeat a motion for summary

judgment." Southway, 149 F. Supp.2d at 1274.  "Summary judgment should not enter if,

viewing the evidence in a light most favorable to the non-moving party and drawing all

reasonable inferences in that party's favor, a reasonable jury could return a verdict for

that party." Id. at 1273.

Here, defendants assert that they are entitled to qualified immunity on the

plaintiff's remaining claims.  "The doctrine of qualified immunity protects

government officials 'from liability for civil damages insofar as their conduct does

not violate clearly established statutory or constitutional rights of which a

reasonable person would have known.'" Pearson v. Callahan, 129 S. Ct. 808, 815

(2009).  It "balances two important interests - the need to hold public officials

accountable when they exercise power irresponsibly and the need to shield officials

from harassment, distraction, and liability when they perform their duties

reasonably." Id.  "Qualified immunity shields an officer from suit when she makes a

decision that, even if constitutionally deficient, reasonably misapprehends the law

governing the circumstances she confronted." Brosseau v. Haugen, 543 U.S. 194,

198 (2004).  "Because the focus is on whether the officer had fair notice that her

conduct was unlawful, reasonableness is judged against the backdrop of the law at

the time of the conduct.  If the law at that time did not clearly establish that the

officer's conduct would violate the Constitution, the officer should not be subject to

liability or, indeed, even the burdens of litigation."  Id.  When a defendant raises a

qualified immunity defense, the plaintiff "bears the burden of showing that: (1) the

defendants' actions violated a constitutional or statutory right; and (2) the right was

clearly established and reasonable persons in the defendants' position would have

known their conduct violated that right."  Cruz v. City of Laramie, Wyo., 239 F.3d

1183, 1187 (10th Cir. 2001).  The Supreme Court has held that the federal courts have

discretion to determine "which of the two prongs of the qualified immunity analysis

should be addressed first in light of the circumstances in the particular case at hand."

Pearson v. Callahan, 129 S. Ct. at 815-16.

     "Requiring the law to be clearly established provides defendants with 'fair warning'

that their conduct is unconstitutional."  Mimics, Inc. v. Village of Angel Fire, 394 F.3d 836,

841 (10th Cir. 2005).  "The law is clearly established when a Supreme Court or Tenth

Circuit decision is on point, or if the clearly established weight of authority from other

courts shows that the right must be as plaintiff maintains."  Id. (quotations omitted).  To

be clearly established:

> [t]he contours of the right must be sufficiently clear that a reasonable
> official would understand that what he is doing violates that right.  This is
> not to say that an official action is protected by qualified immunity unless
> the very action in question has previously been held unlawful, but it is to
> say that in the light of pre-existing law the unlawfulness must be apparent.

Anderson v. Creighton, 483 U.S. 635, 640 (1987) (citation omitted).  "Thus, qualified

14

immunity leaves ample room for mistaken judgments, . . . and protects all but the plainly incompetent or those who knowingly violate the law." Harman v. Pollock, — F.3d —, 2009 WL 3838277, * (10th Cir. Nov. 18, 2009) (quotations omitted).

When evaluating a motion for summary judgment based on qualified immunity, the court takes the facts "in the light most favorable to the party asserting the injury." Scott v. Harris, 550 U.S. 372, 377 (2007). "[T]his usually means adopting . . . the plaintiff's version of the facts," unless that version "is so utterly discredited by the record that no reasonable jury could have believed him." Id. at 378, 380. "Only if the plaintiff meets [the qualified immunity] two-part test will the defendant assume the normal burden of showing that there are no disputed material facts and that he is entitled to judgment as a matter of law." Bridges v. Yeager, 2009 WL 3601241, *2 (10th Cir. Nov. 3, 2009) (citing Clark v. Edmunds, 513 F.3d 1219, 1222 (10th Cir. 2008)). See Thomson v. Salt Lake County, 584 F.3d 1304, 1324-27 (10th Cir. 2009) (concurring opinion).

**Personal Participation**

As part of their qualified immunity argument, defendants assert that outside of defendant Dr. Anita Bloor, the plaintiff has failed to present any evidence that any other defendant personally participated in any treatment decision regarding the plaintiff's medical care. Defendants note various portions of the plaintiff's deposition in which he stated that he had not had any direct communications, written or otherwise, regarding his Hepatitis C with defendants Joseph Ortiz, Barry Pardus, Chris Petrozzi, Joseph McGarry, Al Estep, Gary Watkins, John Suthers (incorrectly named in the caption as "Mr. Sutton"), and Don Lawson. (Docket No. 161 at 12). In addition, they note that plaintiff had direct communications regarding his Hepatitis C , written or otherwise, with

15

defendant John Bloor in 1997 only when plaintiff was first diagnosed.  Furthermore,

defendants assert that any claim of supervisory liability is without merit.  They contend

that no evidence exists that any of these defendants had any actual knowledge of Dr.

Anita Bloor's decisions regarding how plaintiff's Hepatitis C was to be treated or the

application of the Protocol to it.  These defendants thus assert that plaintiff has stated no

cognizable claim against them as a matter of law.

"Individual liability under § 1983 must be based on personal involvement in the

alleged constitutional violation."  Foote v. Spiegel, 118 F.3d 1416, 1423 (10th Cir. 1997).

"Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that

each Government-official defendant, through the official's own individual actions, has

violated the Constitution."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1948 (2009).  With regard

to supervisory liability, the Tenth Circuit has stated:

> Under § 1983, government officials are not vicariously liable for the
> misconduct of their subordinates.  "[T]here is no concept of strict supervisor
> liability under § 1983." . . .  "This does not mean that a supervisor may not
> be liable for injuries caused by the conduct of one of his subordinates.  It
> does mean that his liability is not vicarious, that is, without fault on his part."
> . . . .
>
> Supervisors are only liable under § 1983 for their own culpable
> involvement in the violation of a person's constitutional rights.  To establish
> supervisor liability under § 1983, "it is not enough for a plaintiff merely to
> show a defendant was in charge of other state actors who actually
> committed the violation.  Instead, . . . the plaintiff must establish 'a
> deliberate, intentional act by the supervisor to violate constitutional rights.'"
> . . .  In short, the supervisor must be personally "involved in the
> constitutional violation," and a "sufficient causal connection" must exist
> between the supervisor and the constitutional violation." . . . .
>
> In order to establish a § 1983 claim against a supervisor for the
> unconstitutional acts of his subordinates, a plaintiff must first show the
> supervisor's subordinates violated the constitution.  Then, a plaintiff must
> show an "affirmative link" between the supervisor and the violation, namely

16

> the active participation or acquiescence of the supervisor in the constitutional violation by the subordinates. . . .  In this context, the supervisor's state of mind is a critical bridge between the conduct of a subordinate and his own behavior.  Because "mere negligence" is not enough to hold a supervisor liable under § 1983, a plaintiff must establish that the supervisor acted knowingly or with "deliberate indifference" that a constitutional violation would occur. . . .

Serna v. Colorado Dep't of Corrections, 455 F.3d 1146, 1151-52 (10th Cir. 2006)

(citations omitted).

This court finds that the plaintiff has sufficiently alleged and shown the personal participation by these defendants to withstand defendants' motion at this time.  As stated by plaintiff in his response, his claims against these defendants "are based on their having created, implemented, and ordered applied, a policy of acts and omissions which they have used to deny Plaintiff's receiving any treatment whatsoever, thereby exposing the Plaintiff to the unnecessary and continuing risk of substantial harm.  Defendant J. Bloor has also personally denied Plaintiff's requests/appeals for treatment on at least two occasions . . . ."  (Docket No. 171 at 20).

**Claim Two: Equal Protection**

Judge Miller found in his September 19, 2007, Order that two of the plaintiff's three claims are still pending.  First, Judge Miller determined that the "Plaintiff has clearly stated a claim for violation of his equal protection rights.  The policy governing who will be eligible for antiviral treatment appears to discriminate on its face on the basis of age." Taylor v. Ortiz, 2007 WL 27446746, *6 (D. Colo. Sept. 19, 2007).

The CDOC policy with respect to the treatment of Hepatitis C is contained in a written "Clinical Standard and Procedure for Health Care Providers." (See Docket No. 161-2 at 2) (hereinafter "the Protocol").  The Protocol provides that "[a]ll offenders within

17

the CDOC, who are diagnosed with chronic hepatitis C, are <u>potential</u> candidates for antiviral therapy.  Treatment is recommended for patients who are at greatest risk for end-stage liver disease (ESLD) and hepatocellular carcinoma (HCC)."  (Docket No. 161-2 at 2) (emphasis added).  Furthermore, the Protocol states that "[i]n order to receive treatment, offenders with this diagnosis <u>must</u> meet certain criteria . . . . A simplified version of this is delineated in *Attachment A*."  (Docket No. 161-2 at 2) (emphasis in underscore added).  The section of the Protocol entitled "Selecting Patients Eligible for Treatment for Hepatitis C" states that "[s]pecific criteria have been established to determine eligibility for treatment" which "<u>must</u> be satisfied before doing a liver biopsy."  (Docket No. 161-2 at 7) (emphasis added).  Such criteria is listed in that section and in Attachment C to the Protocol.  Significantly, that section provides in pertinent part that "CDOC patients <u>will</u> <u>not</u> be offered treatment if they: . . . are outside of the current age guidelines for treatment."  (Docket No. 161-2 at 9-10).  Furthermore, Attachment C referenced above, which is the "Initial Checklist for CDOC Patients Who Want to be Considered for Treatment for Hepatitis C" that must be completed, includes the question, "[i]s the patient less than 65 years old with a life expectancy, in your judgment, of at least 20 years?"  (Docket No. 161-2 at 19).

In their motion for summary judgment, defendants assert that:

Plaintiff has not presented sufficient factual evidence demonstrating any violation of his Equal Protection rights.  First, no evidence in the record indicates that any of the Defendants created, or applied, the Protocol with the intent to discriminate against a certain group of individuals. . . . Second, Plaintiff has not and cannot demonstrate that any Defendant was motivated in any respect to any acts or omissions taken with respect to him based on discriminatory motive.  Lastly, Plaintiff has failed to present any facts that other inmates similarly situated to him, but younger, have been provided his desired treatment. . . .  As such, any equal protection claim is

18

without merit as a matter of law.

(Docket No. 161 at 15).

This court finds, however, that the plaintiff has demonstrated sufficient factual evidence demonstrating that the defendants' actions violated a constitutional right and thus has met his burden with respect to the first part of the qualified immunity test. As noted above, the Protocol specifically states that "CDOC patients will not be offered treatment if they: . . . are outside of the current age guidelines for treatment" (Docket No. 161-2 at 9-10) (emphasis added), and the checklist for patients who want to be considered for treatment includes the question, "[i]s the patient less than 65 years old with a life expectancy, in your judgment, of at least 20 years?" (Docket No. 161-2 at 19). Furthermore, plaintiff has filed portions of his medical record which show that he was denied his requested Hepatitis C treatment due to his age pursuant to the Protocol. See, e.g., Docket No. 171 at 123 ("Hep C - Not IFN candidate due to age + co-existing diseases"), 128 ("Here to discuss Hep C tx protocol - Does not meet criteria age 70 criteria [less than] 65"), 129 ("You do not meet the age guidelines for hep C+ treatment (See attachment C-1 of the Hepatitis C guidelines);" "Wants tx of his hep C but doesn't meet age guidelines. . . ."); 130 ("Pt does not meet the age criteria for hep C+ tx . . .;" "I checked with the liver specialist + you are not eligible for treatment. See page 9 of the CDOC Guidelines Handout. . . .").

This court, however, finds that plaintiff has not met his burden at step two of the qualified immunity test. This court agrees with the defendants' assertion that the equal protection right was not clearly established because "[n]o precedent exists even remotely suggesting that such a differentiation in how Hepatitis C is treated in the

19

prison context is violative of an inmate's Fourteenth Amendment constitutional

rights.  Defendants have located absolutely no precedent that is even remotely

analogous to this factual situation."  (Docket No. 161 at 17-18).  Therefore, this

court finds that defendants are entitled to qualified immunity on claim two and that

defendants are thus entitled to summary judgment on plaintiff's claim for damages on

claim two.

Nevertheless, it is recommended that plaintiff's request for injunctive relief on

this claim not be dismissed at this time.  It is well established that "[t]he Equal

Protection Clause of the Fourteenth Amendment commands that no State shall

deny to any person within its jurisdiction the equal protection of the laws, which is

essentially a direction that all persons similarly situated should be treated alike."

Brown v. Watts, 2009 WL 3052231, *6 (D. Colo. Sept. 21, 2009) (quotations

omitted).  "The challenged disparate treatment must be the result of purposeful

discrimination. . . .  To properly allege an equal protection claim, a plaintiff must

plead sufficient facts to demonstrate that he has been treated differently from others

with whom he is similarly situated and that the unequal treatment was the result of

intentional or purposeful discrimination."  Id. (citations and quotations omitted).

Here, plaintiff alleges that he was treated differently from other inmates with

Hepatitis C due to his age and that defendants acted based upon a discriminatory

intent or motive.

The court notes, however, that in this case the plaintiff does not claim that the

defendants treated him differently because of any suspect classification because

age is not a suspect class for purposes of equal protection.  See Kimel v. Florida Bd. of

20

Regents, 528 U.S. 62, 83 (2000).  "Age classifications, unlike governmental conduct

based on race or gender, cannot be characterized as 'so seldom relevant to the

achievement of any legitimate state interest that laws grounded in such considerations

are deemed to reflect prejudice and antipathy.' . . .  Older persons, again, unlike those

who suffer discrimination on the basis of race or gender, have not been subjected to a

'history of purposeful unequal treatment.' . . .  Old age also does not define a discrete

and insular minority because all persons, if they live out their normal life spans, will

experience it. . . . "  Id. (quotations and citations omitted).  "**States may discriminate on**

**the basis of age without offending the Fourteenth Amendment if the age**

**classification in question is rationally related to a legitimate state interest.**  The

rationality commanded by the Equal Protection Clause does not require States to match

age distinctions and the legitimate interests they serve with razorlike precision.  As [the

Supreme Court has] explained, when conducting rational basis review 'we will not

overturn such [government action] unless the varying treatment of different groups or

persons is so unrelated to the achievement of any combination of legitimate purposes

that we can only conclude that the [government's] actions were irrational."  Id. (quotation

omitted) (emphasis added).  "[B]ecause an age classification is presumptively rational,

the individual challenging its constitutionality bears the burden of proving that the 'facts

on which the classification is apparently based could not reasonably be conceived to be

true by the governmental decisionmaker.'"  Id.

Here, the court notes that the defendants repeatedly claim that the Protocol was

adopted by the CDOC "based on existing scientific and medical research on the

treatment of Hepatitis C, consultations with University of Colorado Health Sciences Center physicians and researchers, and a review of similar Hepatitis C treatment Protocols from other jurisdictions." (See, e.g., Docket No. 161 at 10). In addition, defendants claim that the CDOC "has continued to keep up to date on the current scientific and medical research on the treatment of Hepatitis C as well as current treatment protocols adopted by other corrections systems throughout the United States." (See., e.g., Docket No. 161 at 10). Nevertheless, other than these general, conclusory references to research, consultations, and reviews of similar Protocols with respect to the adoption of the entire CDOC Protocol, the defendants so far have not provided any specific basis for the CDOC's age guidelines for Hepatitis C treatment and have not demonstrated that the age classification in question is rationally related to a legitimate state interest. Accordingly, at this time and on this record, this court cannot find, as asserted by the defendants, that any equal protection claim is without merit as a matter of law. Therefore, it is recommended that defendants' motion for summary judgment with respect to plaintiff's claim for injunctive relief be denied at this time.

### Claim Three: Due Process

The second claim that Judge Miler found to be remaining is a "cause of action with regard to whether [plaintiff] is entitled to treatment under the protocol or whether some of the defendants have unreasonably interpreted the policy. Again, construing his allegations liberally and drawing all reasonable inferences in favor of Plaintiff, the protocol is arguably ambiguous in that in once section it appears to preclude treatment for individuals over 65 but in another section it provides that treatment 'will' be provided to individuals with Hepatitis C and another liver disease, such as cirrhosis." Taylor v.

Ortiz, 2007 WL 27446746, *6 (D. Colo. Sept. 19, 2007).  Judge Miller noted that in this case "there is a policy which could plausibly (at least at this stage and under the standards governing a motion to dismiss) include Plaintiff in the class of inmates eligible for treatment. . . ."  Id.

Defendants now assert, in pertinent part, that "Plaintiff had alleged, at the Motion to Dismiss stage, that he suffers from cirrhosis and Hepatitis B.  In reality, however, no actual medical evidence exists that Plaintiff suffers from cirrhosis, Hepatitis B, or any other liver disease. [See Anita Bloor, M.D. Declarations, ¶ 9, Exh. A-3].  Without the potential ambiguity, Plaintiff has no due process claim."  (Docket No. 161).

Defendant Dr. Anita Bloor is the plaintiff's treating physician.  In her Declaration, referenced above, Dr. Bloor states the following in pertinent part:

2.   I have been Plaintiff's treating physician for more than ten (10) years.

3.   I am familiar with Plaintiff's medical files and have reviewed the files recently due to discovery requests made by Plaintiff.

4.   **Plaintiff's medical records do not indicate that he is suffering from any liver disease other than hepatitis C.**

5.   Hepatitis C is a virus that infects the liver.  It is typically transmitted "blood-to-blood," with the most common route of infection currently being illicit intravenous drug use.  Following infection with hepatitis C, most patients will go for years without knowing that they have the infection because they manifest no symptoms of hepatitis C. Medical studies have found that even after twenty (20) to thirty (30) years, only one (1) in twenty-four (24) patients will develop liver cirrhosis after being infected with Hepatitis C.  About one (1) in seven (7) individuals or 15% will develop liver cancer in five (5) to ten (10) years after cirrhosis of the liver is present.  However, importantly, most individuals who contract Hepatitis C do not die of liver disease.

6.   As the above data indicate, the progression of Hepatitis C to chronic

liver disease depends on each individual patient.  Not all patients infected with Hepatitis C require the same type of treatment. Differences in treatment–which may range from simple monitoring of the progression of the disease to active treatment with strong antiviral drugs–are warranted depending on the progression of each individual patient's liver disease.

7.   **Plaintiff's record clearly shows that he does not suffer from hepatitis B**.

8.   **It is unlikely that plaintiff has liver cirrhosis since his platelet count, INR, albumin, and bilirubin are all normal.  <u>The only liver test that suggests cirrhosis is a mildly elevated alphafetoprotein.  However, plaintiff exhibits no symptoms of cirrhosis</u>**.

9.   **In summary, Plaintiff's medical records do not indicate or otherwise suggest that he suffers from any liver disease other than Hepatitis C**.

(Docket No. 161-4 at 3-4) (emphasis added).  Similarly, in her responses to plaintiff's request for admissions, Dr. Anita Bloor repeatedly states that "no medical evidence exists that Plaintiff suffers from any other liver disease other than hepatitis C."  (Docket No. 163-2 at 21, 22, 23).  Defendants Dr. John Bloor and medical team leader Chris Petrozzi state the same in their responses.  (Docket No. 153-2 at 14, 16, and 24).

Plaintiff, however, responds that defendants' statements are false and at best a gross misstatement of what his medical records show.  He alleges that his medical records do indicate that he has cirrhosis.  (Docket No. 171 at 22) (citing plaintiff's undisputed facts numbered 6, 7, and 8 and exhibits cited therein).  More specifically, citing two publications, <u>100 Questions and Answers About Hepatitis C: A Lahey Clinic Guide</u> and <u>Living with Hepatitis C: A Survivor's Guide</u>, plaintiff lists thirteen symptoms he claims are signs of the presence of cirrhosis, and he asserts his medical records show

that he exhibits such symptoms.  (Docket No. 171 at 26-28).  In addition, quoting one of

these publications, he claims that "platelet count, INR, albumin, and bilirubin in some

cases will show no abnormality when the patient has cirrhosis (i.e., until the patient is in

the last end-stages of liver disease/approaching liver failure)" and that "No Symptoms

but With Underlying Cirrhosis . . . A stable cirrhotic patient . . . and have stable liver tests.

. .; alternatively, the patients liver tests may suddenly deteriorate with rising bilirubin,

increase in liver enzymes, and drop in serum albumin. [However] Some patients

experience <u>only</u> a loss of appetite, fever, and unexplained weight loss." (Docket No. 171

at 28) (internal quotations omitted).  Moreover, cirrhosis is mentioned on occasion in

plaintiff's medical record.  (<u>See, e.g.</u>, Docket No. 171 at 124, 125, 127, 131).     "For

qualified immunity purposes, [such] . . . factual dispute . . . is irrelevant.  In determining

whether a plaintiff's constitutional rights were violated [the court] ordinarily . . . adopt[s]

plaintiff's version of the facts, insofar as it is supported by the record."  <u>Thomson v. Salt

Lake County</u>, 584 F.3d 1304, 1318 (10th Cir. 2009).  This court finds that for qualified

immunity purposes, the plaintiff has met his burden of proving the first part of the

qualified immunity test by demonstrating a violation of a constitutional right.  Plaintiff's

verison of the facts with respect to whether he has a second liver disease and thus may

meet the criteria for treatment under the Protocol is not "so utterly discredited by the

record that no reasonable jury could have believed" it.  <u>Scott v. Harris</u>, 550 U.S. at 380.

This court, however, further finds that plaintiff has not met the second part of the

qualified immunity test.  This court agrees with the defendants' assertion that "[n]othing

contained in existing law would have provided any notice whatsoever to any of the

Defendants that their participation in the adoption and approval of the CDOC Hepatitis C

25

treatment protocol or its application to Plaintiff could have constituted a violation of Plaintiff's Fourteenth Amendment due process rights." (Docket No. 161 at 18). Thus, defendants are entitled to summary judgment on plaintiff's claim for damages on this claim.

Nevertheless, based upon the above, this court finds that there is a genuine issue of material fact with respect to whether plaintiff suffers a liver disease in addition to Hepatitis C. This court thus recommends that defendants' motion for summary judgment on plaintiff's claim for injunctive relief based on claim three be denied at this time.

**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED** that Plaintiff's Request for Permission to Revisit Eighth Amendment Issue (Docket No. 178) be **denied**. It is further

**RECOMMENDED** that Defendants' Motion for Summary Judgment (Docket No. 161) be **granted in part and denied in part**. More specifically, it is recommended that the motion be granted with respect to plaintiff's claim for damages based on qualified immunity. In all other respects, the motion should be denied.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case. A party may respond to another party's objections within fourteen (14) days after being served with a copy. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives *de novo* review of the**

26

recommendation by the District Judge, <u>Thomas v. Arn</u>, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions.  <u>Makin v. Colorado Dep't of Corrections</u>, 183 F.3d 1205, 1210 (10th Cir. 1999); <u>Talley v. Hesse</u>, 91 F.3d 1411, 1412-13 (10th Cir. 1996).


Dated: December 14, 2009                s/Michael J. Watanabe
       Denver, Colorado                   Michael J. Watanabe
                                          United States Magistrate Judge