IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 05-cv-00574-PAB-MJW

JAMES A. TAYLOR,

      Plaintiff,

v.

JOE ORTIZ, CDOC Current Executive Director, et al.,

      Defendants.

_____

**ORDER ACCEPTING IN PART AND OVERRULING IN PART
MAGISTRATE JUDGE'S RECOMMENDATIONS**
_____

This matter is before the Court on defendants' motion for summary judgment [Docket No. 161] and plaintiff's request for permission to revisit the Court's earlier dismissal of his Eighth Amendment claim [Docket No. 178]. These motions were referred to Magistrate Judge Michael Watanabe [Docket Nos. 162, 179] and have been fully briefed by the parties [Docket Nos. 171, 175, 181, 182]. The magistrate judge issued a thorough recommendation on the motions [Docket No. 184], to which both sides have objected [Docket Nos. 187, 188]. The Court takes up the motions in light of the parties' objections and conducts the requisite *de novo* review. For the reasons below, I accept the recommendation in part, overrule the recommendation in part, and dismiss this case in full.

**I.  BACKGROUND**

The magistrate judge's recommendation, along with prior orders in this case, set out in detail the factual and procedural history of this matter. Briefly, plaintiff James

Taylor is an inmate at Colorado's Limon Correctional Facility. Defs.' Mot. for Summ. J. [Docket No. 161] ("Defs.' Mot.") at 2 ¶ 1; Pl.'s Resp. to Defs.' Mot. for Summ. J. [Docket No. 171] ("Pl.'s Resp.") at 5 ¶ 1. In 1997, at the age of 66, he was diagnosed with hepatitis C. Defs.' Mot. at 2 ¶¶ 2-3; Pl.'s Resp. at 5 ¶ 1. This lawsuit concerns the denial by defendants – administrative and medical officials of either Limon Correctional Facility or the Colorado Department of Corrections – of plaintiff's requests for treatment of his condition.

The Department of Corrections has promulgated guidelines for the diagnosis and treatment of hepatitis C (the "treatment protocol"). *See* Compl. [Docket No. 2], Ex. B-1 to B-27. According to the guidelines, "the best treatment for hepatitis C that is available at this time is pegylated (long-acting) interferon together with ribavirin." *Id.*, Ex. B-2. Because the most serious complications of hepatitis C are associated with end-stage liver disease and cirrhosis, treatment is particularly important for people at the greatest risk for disease progression. *Id.*, Ex. B-3, B-5. Plaintiff claims that defendants have ignored the guidelines and have refused to provide him interferon/ribavirin treatment.

In early 2005, plaintiff filed suit seeking both injunctive relief, in the form of an order requiring defendants to provide him medical treatment, and damages. Plaintiff's complaint asserted three constitutional causes of action: violation of the Eighth Amendment's prohibition on cruel and unusual punishment; violation of his due process rights; and violation of the equal protection clause. In ruling on defendants' initial motion to dismiss, the Court found that the cruel and unusual punishment argument failed to state a claim and ordered it dismissed. Order on Rec. of Mag. Judge [Docket

No. 103] ("Order re Mot. to Dismiss"). The other two claims were permitted to proceed. *Id.*

Following discovery, defendants moved for summary judgment on plaintiff's remaining claims. Plaintiff's response to this motion included arguments that defendants had subjected him to cruel and unusual punishment. *See* Pl.'s Resp. at 47-52. Defendants took issue with these arguments, pointing out that this Eighth Amendment theory had already been rejected. Defs.' Reply in Support of Mot. for Summ. J. [Docket No. 175] at 2. Apparently in response, plaintiff filed a "request for permission to revisit the Eighth Amendment issue" [Docket No. 178] ("Mot. to Revisit"), which was opposed by defendants [Docket No. 181].[1]

The magistrate judge addressed both motions in a single, comprehensive recommendation. Mag. Rec. [Docket No. 184]. He first found that plaintiff's motion to revisit should be denied on the grounds that it made no showing that the earlier order was clearly erroneous or resulted in manifest injustice and, in any event, the prior ruling was correct. *Id.* Turning to defendants' motion for summary judgment, he recommended that plaintiff's claims for damages should be dismissed on the basis of qualified immunity, but that plaintiff's claims for injunctive relief should be allowed to go forward. Both parties timely filed objections to these recommendations. Plaintiff contests the rejection of his motion for reconsideration and the findings of qualified

---

[1] The Court notes that the parties, and particularly plaintiff, presented very helpful briefing on these issues. I recognize that *pro se* inmates often lack certain resources to prepare their submissions. While I find that plaintiff's arguments ultimately do not succeed, and while certain briefs were quite detailed, I commend plaintiff for presenting an organized and articulate case.

immunity, Pl.'s Obj. to Mag. Rec. [Docket No. 187] ("Pl.'s Obj."), while defendants take issue with permitting the claims for injunctive relief to proceed, Defs.' Obj. to Mag. Rec. [Docket No. 188] ("Defs.' Obj.").

## II. STANDARD OF REVIEW OF MAGISTRATE RECOMMENDATION

When a party files a timely objection to a magistrate judge's recommended adjudication of a dispositive motion, a district court reviews the objected-to portion of the recommendation *de novo*. Fed.R.Civ.P. 72(b). As the parties have essentially objected to the entirety of the recommendation, I review both plaintiff's motion for reconsideration and defendants' motion for summary judgment under this *de novo* standard.

## III. PLAINTIFF'S MOTION TO REVISIT EIGHTH AMENDMENT CLAIM

As a threshold matter, the Federal Rules of Civil Procedure do not expressly provide for motions for "reconsideration." *See Hatfield v. Bd. of County Comm'rs for Converse County*, 52 F.3d 858, 861 (10th Cir. 1995). Perhaps as a result, the parties disagree about the appropriate standard for reviewing plaintiff's request. Plaintiff invokes several cases noting that courts may revise orders granting partial summary judgment, as those orders are not final and appealable. *See* Mot. to Revisit at 2 (citing *Alberty-Velez v. Corporacion de Puerto Rico Para La Difusion Publica*, 361 F.3d 1, 6 n.5 (1st Cir. 2004); *Joseph P. Caulfield & Assoc., Inc. v. Litho Prods., Inc.*, 155 F.3d 883, 888 (7th Cir. 1998)). However, the Court's prior ruling was on a motion to dismiss, not a motion for summary judgment, making these cases of questionable relevance. Defendants, on the other hand, focus on the standards of Federal Rules of Civil

Procedure 59(e) and 60(b). Defs.' Resp. to Pl.'s Mot. to Revisit [Docket No. 181] at 5 (citing *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000) (discussing reconsideration under Rules 59(e) and 60(b)). But these rules apply only to final judgments, not to interlocutory orders, like the prior ruling in this case, that dismiss fewer than all the claims or parties. *United Fire & Cas. Co. v. Boulder Plaza Residential, LLC*, No. 06-cv-00037, 2010 WL 420046, *3 (D. Colo. Feb. 1, 2010) ("[W]here a party files a motion for reconsideration prior to the entry of judgment, Rules 59(e) and 60(b) do not apply."); *see also Fye v. Okla. Corp. Comm'n*, 516 F.3d 1217, 1224 n.2 (10th Cir. 2008) ("The District Court's partial summary judgment ruling was not a final judgment. Thus, [plaintiff's] motion for reconsideration is considered an interlocutory motion invoking the district court's general discretionary authority to review and revise interlocutory rulings prior to entry of final judgment. . . . In such a case, the district court is not bound by the strict standards for altering or amending a judgment encompassed in Federal Rules of Civil Procedure 59(e) and 60(b).") (quotations and citations omitted).

Where, as here, a party seeks "reconsideration" of a non-final order, that motion "falls within a court's plenary power to revisit and amend interlocutory orders as justice requires." *United Fire & Cas. Co.*, 2010 WL 420046, at *3; *see also* Fed. R. Civ. P. 54(b) ("[A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."). However, "[i]n order to avoid the inefficiency which would attend the repeated

5

re-adjudication of interlocutory orders, judges in this district have imposed limits on their broad discretion to revisit interlocutory orders." *United Fire & Cas. Co.*, 2010 WL 420046, at *3. Although courts in this district have applied different standards, *see id.* (noting cases applying Rule 59(e) standard, Rule 60(b) standard, and "law of the case" standard), the basic assessment tends to be the same: courts consider whether new evidence or legal authority has emerged or whether the prior ruling was clearly in error. *See, e.g.*, *Montano v. Chao*, No. 07-cv-00735, 2008 WL 4427087, *5-6 (D. Colo. Sept. 28, 2008) (applying Rule 60(b) standard and noting that "'[a] motion to reconsider would be appropriate where, for example, the [c]ourt has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the [c]ourt by the parties, or has made an error not of reasoning but of apprehension.'" (citing *United States v. Ibarra*, 920 F.2d 702, 706 n. 3 (10th Cir. 1990), *vacated on other grounds*, 502 U.S. 1 (1991))); *United Fire & Cas. Co. v. McCrerey & Roberts Constr. Co.*, No. 06-cv-00037, 2007 WL 1306484, *2 (D. Colo. May 3, 2007) ("There are three major grounds that justify reconsideration of a motion under Rule 59(e): (1) an intervening change in the controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice."); *M.M. v. Zavaras*, 939 F. Supp. 799, 801 (D. Colo. 1996) (applying law of the case doctrine to motion to reconsider and noting that "'[c]ourts have generally permitted a modification of the law of the case when substantially different, new evidence has been introduced, subsequent, contradictory controlling authority exists, or the original order is clearly erroneous'" (quoting *Major v. Benton*, 647 F.2d 110, 112 (10th Cir. 1981))).

Under any of these standards, plaintiff's motion must be denied.  Plaintiff's

arguments for reconsideration indicate disagreements with how the initial order

characterized certain facts and interpreted the treatment protocol.  Plaintiff cites no

newly discovered facts, nor case law that was subsequent – and contradictory – to the

original ruling.[2]  At bottom, plaintiff's dispute is with the court's reasoning.  That is not

sufficient grounds for reconsideration.  I concur with the magistrate judge's

recommendation that the motion to reconsider be denied.[3]

## IV.  DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Having concluded that plaintiff's Eighth Amendment claim will not be revisited,

two claims are left: violation of due process and violation of the equal protection clause.

Defendants move for summary judgment on both causes of action.

### A.  Standard of Review

In general, summary judgment is warranted under Federal Rule of Civil

Procedure 56(c) when "the pleadings, the discovery and disclosure materials on file,

---

[2]  Plaintiff relies heavily on *Thomas v. Bruce*, 125 F. App'x 964 (10th Cir. 2005), a case in which the Tenth Circuit reversed the dismissal of an inmate's Eighth Amendment claim for ignoring needed care for his hepatitis C.  Mot. to Revisit at 20-24. As a threshold matter, this is not a "new" case, but had been issued more than two years before the Court's dismissal of the Eighth Amendment claim.  In any event, while similar in some respects, there are critical differences between the cases.  Most importantly, in *Bruce*, the prison was alleged to have expressly ignored a *doctor's order* for a biopsy to treat the inmate's hepatitis C.  125 F. App'x at 965.  Here, by contrast, there is no allegation or evidence that any medical orders were disregarded.

[3]  In his objections, plaintiff places particular importance on the contention that defendants failed to give him a full diagnosis, i.e., a liver biopsy, before determining to deny him treatment.  Pl.'s Obj. at 2-7.  However, as discussed below, plaintiff was not entitled to a biopsy in light of the fact that he is too old to qualify for treatment.  Even if I were to reconsider the Eighth Amendment claim on this ground, I would conclude that plaintiff lacks a viable cause of action.

7

and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & County of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997). When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.* Even so, the non-moving party must proffer actual, supportable evidence; "[t]o defeat a motion for summary judgment, evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise." *Bones v. Honeywell Intern., Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

As noted above, plaintiff seeks both injunctive relief and damages. The summary judgment assessment on plaintiff's claims for injunctive relief is simple: is there a genuine dispute of material fact over whether plaintiff's constitutional rights were violated? *See, e.g.*, *Ajaj v. United States*, 293 F. App'x 575, 578 (10th Cir. Sept. 15, 2008) ("[O]fficial capacity claims for prospective injunctive relief are subject to normal Fed.R.Civ.P. 56(c) standards."). The assessment on the damages claim is somewhat more involved. Defendants invoke the qualified immunity defense, which "shields government officials performing discretionary functions from liability for civil damages

8

arising from claims brought against them in their individual capacities." *Trask v. Franco*,

446 F.3d 1036, 1043 (10th Cir. 2006).

> Special rules apply when a defendant raises the defense of qualified
> immunity in a summary judgment motion. *Hinton v. City of Elwood, Kan.*,
> 997 F.2d 774, 779 (10th Cir. 1993). In such a case, the plaintiff must
> initially make a twofold showing. *Id.* First, the plaintiff must show that the
> defendant's alleged conduct violated the law. *Id.* Second, the plaintiff
> must show "'that the law was clearly established when the alleged
> violation occurred.'" *Id.* (quoting *Pueblo Neighborhood Health Ctrs. v.
> Losavio*, 847 F.2d 642, 646 (10th Cir.1988)).
>
> If the plaintiff makes this twofold showing, the defendant then bears the
> usual burden of a party moving for summary judgment to show that there
> are no genuine issues of material fact and that he or she is entitled to
> judgment as a matter of law. *Id.* More specifically, the defendant must
> show that there are no material factual disputes as to whether his or her
> actions were "'objectively reasonable in light of the law and the
> information he or she possessed at the time.'" *Id.* (quoting *Coen v.
> Runner*, 854 F.2d 374, 377 (10th Cir. 1988) (citation omitted)). In
> determining whether both parties have satisfied their respective burdens,
> [the court] evaluate[s] the evidence in the light most favorable to the
> nonmoving party. *Id.*

*Cummins v. Campbell*, 44 F.3d 847, 850 (10th Cir. 1994).

Importantly, however, under both the normal Rule 56 analysis (for the injunctive

relief claims) and the qualified immunity analysis (for the damages claims), if plaintiff

has not put forth evidence to suggest a constitutional violation, defendants are entitled

to summary judgment. *See, e.g.*, *Pearson v. Callahan*, 129 S. Ct. 808, 815-16 (2009)

(noting that, in evaluating qualified immunity at the summary judgment stage, "a court

must decide whether the facts that a plaintiff has . . . shown (see Rules 50, 56) make

out a violation of a constitutional right"); *Nielander v. Bd. of County Comm'rs of County

of Republic, Kan.*, 582 F.3d 1155, 1166 (10th Cir. 2009) (summary judgment on the

basis of qualified immunity was proper where there was no evidence that defendants

violated plaintiff's constitutional rights); *cf. Price-Cornelison v. Brooks*, 524 F.3d 1103,

1111-12 (10th Cir. 2008) (noting that, in evaluating whether a plaintiff has asserted a

constitutional violation under the first prong of the qualified immunity analysis, plaintiff's

facts must be accepted "if there is any evidence in the record to support [plaintiff's]

version of events").[4]

## B.  Due Process

Plaintiff's due process claim is based on his contention that defendants failed to

follow official policy, outlined in the treatment protocol, for managing plaintiff's hepatitis

C and that in so doing defendants offended his "protectible liberty interest" in receiving

that treatment.  *See generally Hennigh v. City of Shawnee*, 155 F.3d 1249, 1253 (10th

Cir. 1998) ("To determine whether a plaintiff was denied procedural due process, we

engage in a two-step inquiry: (1) Did the individual possess a protected interest to which

---

[4]  The assessment of the evidence in determining whether a constitutional right
was violated may be somewhat different from the normal evaluation of whether there is
a genuine dispute of material fact sufficient to send a case to the jury.  *See Thomson v.
Salt Lake County*, 584 F.3d 1304, 1326 (10th Cir. 2009) (Holmes, J., concurring) ("In
addressing the legal issue in the qualified immunity context of a violation *vel non* of a
clearly established constitutional right, . . . the principal purpose of assessing whether
plaintiff's evidence gives rise to genuine issues of material fact is different than it is in
the traditional summary judgment analytic paradigm. Specifically, contrary to the latter,
the objective is not to determine whether a plaintiff survives summary judgment
because plaintiff's evidence raises material issues that warrant resolution by a jury.
Instead, the principal purpose is to determine whether plaintiff's factual allegations are
sufficiently grounded in the record such that they may permissibly comprise the
universe of facts that will serve as the foundation for answering the legal question
before the court. . . . It is only after plaintiff crosses the legal hurdle comprised of his or
her two-part burden of demonstrating the violation of a constitutional right that was
clearly established, that courts should be concerned with the true factual landscape –
as opposed to the factual landscape as plaintiff would have it.") (citations omitted).
However, a plaintiff must still point to some evidence to support allegations of a
constitutional violation.  *Id.* at 1325 ("[B]ecause we are beyond the pleading phase of
the litigation, plaintiff's version of the facts must find support in the record.").

due process protection was applicable? (2) Was the individual afforded an appropriate level of process?").  In initially refusing to dismiss this claim, the Court noted that the protocol was "arguably ambiguous";  one section precludes treatment for inmates over 65 years of age, while another section states that treatment "will" be provided to inmates with hepatitis C and a second liver disease such as cirrhosis, which plaintiff alleges he has.  Order re Mot. to Dismiss at 11.  Defendants responded by moving for summary judgment on the ground that the evidence proved plaintiff did not have cirrhosis.  Defs.' Mot. at 15-16.  Plaintiff countered by arguing that this critical fact is in dispute.  *See, e.g.*, Pl.'s Resp. at 8-11.  The magistrate judge found a genuine issue of fact with respect to whether plaintiff suffered from cirrhosis, precluding summary judgment on plaintiff's claim for injunctive relief.  Mag. Rec. at 22-25.  However, the magistrate judge also recommended that defendants be granted qualified immunity on the damages claim.  *Id.*

Defendants argue that this cause of action should have been dismissed in its entirety.  Plaintiff, on the other hand, contends that the magistrate judge misunderstood his due process claim and should not have granted defendants qualified immunity.  Pl.'s Obj. at 8-13.  As explained in detail in his summary judgment briefing, plaintiff's position is that defendants may not simply deny a request for treatment because of an inmate's age, but rather must follow what he claims is a three-step diagnostic process outlined in the treatment protocol to determine whether an inmate qualifies for the interferon/ribavirin treatment.  Pl.'s Resp. at 29-35.  Relatedly, he contends that if an inmate has both hepatitis C and cirrhosis of the liver, the treatment protocol mandates that the inmate must receive the interferon/ribavirin treatment.  *Id.* at 35-36.  Because

11

defendants denied him treatment without completing the three-step diagnostic review

and/or because they denied him treatment even though (he claims) he is a "high risk"

patient and has cirrhosis, plaintiff argues that he has been deprived his liberty interest

in proper diagnosis and treatment.  *Id.* at 41-46; 55-59.  In short, plaintiff seeks the

process he claims he is due under the treatment protocol.  Pl.'s Obj. at 11 ("Plaintiff's

claim is and always has been from the inception of this case, that the Defendant's [sic]

violation of his Fourteenth Amendment due process rights has occurred because the

Defendants have *failed to comply* with the process and procedure mandated by the

Protocol regarding Plaintiff's request to be treated; and Defendants have thereby *failed*

*to apply the Protocol* to the Plaintiff's request for treatment.") (emphasis in original).[5]  I

consider these issues before turning to defendants' objections.

   As a threshold matter, the treatment protocol does not compel a three-step

diagnostic review.  Plaintiff is correct that the protocol requires, as a first step, an actual

diagnosis of hepatitis C.  *See* Compl., Ex. B-4 ("The management of chronic hepatitis C

begins with establishing a diagnosis.").  However, the next steps are not, as plaintiff

---

   [5]  As legal support for the proposition that he has a protected interest in the
process outlined in the treatment protocol, plaintiff cites to cases holding that
mandatory prison regulations can create liberty interests.  Pl.'s Resp. at 40.  The
Supreme Court has backed away from this "mandatory language" analysis, looking
instead to whether the prisoner has been subjected to "atypical and significant
hardship[s]" in order to determine whether a liberty interest exists.  *Sandin v. Conner*,
515 U.S. 472, 479-84.  Under the *Sandin* test, it is not obvious that plaintiff has a
protected liberty interest at all.  *See generally Steffey v. Orman*, 461 F.3d 1218, 1221
(10th Cir. 2006) ("A due process claim under the Fourteenth Amendment can only be
maintained where there exists a constitutionally cognizable liberty or property interest
with which the state has interfered.").  However, because I ultimately conclude that
defendants complied with the treatment protocol, I will assume without deciding that
plaintiff does in fact have a liberty interest in diagnosis and treatment that requires the
process outlined in the protocol to be followed.

contends, an assessment of risk factors and then a liver biopsy. Pl.'s Resp. at 32-34.

Rather, the protocol provides that, after diagnosis and before treatment is considered,

an initial checklist to determine eligibility "must be completed." Compl., Ex. B-18; *see*

*also id.*, Ex. B-3 ("In order to receive treatment, offenders with this diagnosis must meet

certain criteria . . . ." ). The protocol expressly notes that a biopsy will not be

considered before eligibility is established. *Id.*, Ex. B-8 ("Specific criteria have been

established to determine eligibility for treatment. These must be satisfied before doing

a liver biopsy.").

Included on this initial checklist is the following question: "Is the patient less than

65 years old with a life expectancy, in your judgment, of at least 20 years?" *Id.*, Ex. B-

22. This question ties back to an age restriction announced in the protocol; "CDOC

patients ***will not*** be offered treatment if they . . . [a]re outside of the current age

guidelines for treatment." *Id.,* Ex. B-10, B-11 (emphasis in original). A critical

component of plaintiff's objection is his claim that, contrary to the position of defendants

(and the conclusion of the magistrate judge), these sections of the protocol do not

establish a firm age cutoff. Plaintiff argues that the age question is just that – a

question – to be subjectively considered along with the other items on the checklist.

*See, e.g.*, Pl.'s Resp. at 2-3. But a reading of the protocol as a whole refutes this

interpretation. A prohibition on treatment to those outside the "age guidelines,"

combined with a question about age in the initial list of questions, logically means that if

an inmate answers that he is above the threshold age, he is ineligible for the

interferon/ribavirin treatment. In other words, if the inmate is 65 years of age or older, the treatment is not an option.

It is undisputed that plaintiff was over 65 years of age when he was diagnosed with hepatitis C. Defs.' Mot. at 2 ¶ 3; Pl.'s Resp. at 5 ¶ 1. Thus, plaintiff was not arbitrarily denied treatment in violation of the protocol's process. Instead, the protocol was followed and, once it was determined that plaintiff was too old to be eligible for treatment, the other steps in the diagnostic process, including a liver biopsy, were not required.

Nor did defendants ignore plaintiff's risk factors in disregard of the protocol. Plaintiff points to various statements in the treatment protocol (and other medical literature) that patients with certain characteristics, e.g., being male, being African-American, having been a heavy drinker, and having hepatitis C for 20+ years, have a higher risk of negative disease progression. Pl.'s Resp. at 32-33. But even accepting this as true, there is nothing in the protocol that requires assessment of these risk factors before determining eligibility for treatment. In fact, the reverse is true; the protocol dictates that completion of the initial checklist – with the age determination – is the first step after basic diagnosis. Therefore, defendants did not "fail[ ] . . . to comply with their own Protocol policy when they den[ied] [plaintiff] the same treatment being provided to everyone else in that group of Protocol-designated 'highest risk category for disease progression.'" *Id.* at 4. Rather, defendants followed the protocol by first assessing plaintiff's age and eligibility.

Finally, plaintiff argues that, regardless of the age criteria, he was eligible for treatment because he has both hepatitis C and cirrhosis. Plaintiff is correct that the

protocol states that there may be exceptions to who is treated and that one of these exceptions is that "if a patient has both chronic hepatitis B and C or other chronic liver disease [e.g., cirrhosis], they will be treated." Compl., Ex. B-19 (emphasis in original). The magistrate judge found there to be a genuine dispute of fact over whether plaintiff in fact has cirrhosis, leading to his recommendation that this claim proceed to trial. Defendants object to this finding, arguing that no such dispute exists. I agree with defendants.

In support of their motion for summary judgment, defendants submitted the declaration of Dr. Anita Bloor, plaintiff's treating physician. She stated unequivocally that "[p]laintiff's medical records do not indicate that he is suffering from any liver disease other than hepatitis C." Defs.' Mot., Ex. A-3 ¶ 4. More specifically, she noted that "[i]t is unlikely that plaintiff has liver cirrhosis" because of the results of certain tests, and further observed that, although one liver test showed a "mildly elevated alphafetoprotein," which could suggest cirrhosis, "plaintiff exhibits no symptoms of cirrhosis." *Id.* ¶ 8.

Plaintiff, in response, points to portions of his medical records that contain the term "cirrhosis." Pl.'s Resp. at 10 ¶ 1. However, nowhere in these notations is there an affirmative diagnosis of cirrhosis. Compl., Ex. A-9 ("Likely rising [illegible] FP is [illegible] cirrhosis."), A-10 ("Pt chronic hep C. His alphafetoprotein (may be hepatoma marker) is rising. R/o tumor [illegible] cirrhosis."); A-11 ("(1) Pruritus. May be [illegible] cirrhosis."); A-12 ("(2) Cirrhosis/Hep C+ – await MRF"). Further, these entries were all signed by Dr. Bloor, who has stated, under oath, that plaintiff's records do not show the condition. The doctor, not plaintiff, is the appropriate person to interpret this data.

Plaintiff also cites to two medical treatises that discuss symptoms of cirrhosis

and claims that he shows many of the signs. Pl.'s Resp. at 12-13 (citing Stephen C.

Fabry & R. Anand Narasimhan, *100 Questions & Answers About Hepatitis C: A Lahey*

*Clinic Guide* 27 (Jones & Bartlett Pubs. 2007); Gregory T. Everson, *Living With*

*Hepatitis C* (Hatherleigh Press 5th ed.)). But many of these symptoms, e.g., itching,

abdominal pain, exhaustion, and fatigue, are common in people without hepatitis C.

*100 Questions & Answers* at 27. Indeed, "[p]atients with cirrhosis can present with a

variety of signs and symptoms, ranging from almost nothing to a life-threatening

complication." *Id.* at 127. Mere symptoms are not the same as medical evidence of the

disease. More importantly, plaintiff's self-diagnosis is not competent evidence in the

face of his doctor's diagnosis to the contrary. *See Kayser v. Caspari*, 16 F.3d 280, 281

(8th Cir. 1994) (dismissing plaintiff's claim of an Eighth Amendment violation for

ignoring kidney ailment and holding that plaintiff's claim of kidney stones was not

evidence that he had the disease when "the available medical evidence does not

support his self-diagnosis"). In short, there is nothing other than speculation to support

plaintiff's claim that he has cirrhosis, and "mere speculation is insufficient to thwart

summary judgment." *Nielander*, 582 F.3d at 1171.

For all of these reasons, I find that plaintiff did not meet his threshold burden of

showing that defendants violated his due process rights. *Cummins*, 44 F.3d at 850.

The protocol was followed and plaintiff was denied treatment because of his age. With

no evidence of a constitutional violation, this claim must be dismissed.

## C. Equal Protection

Plaintiff's equal protection claim is grounded in age discrimination. More specifically, plaintiff contends that defendants denied him a thorough diagnostic review and proper care because of what he characterizes as the arbitrary decision to deny interferon/ribavirin treatment to inmates over 65 years.[6]  Pl.'s Resp. at 59-66.  While age discrimination may form the basis of an equal protection claim, such a case is difficult to make because "[s]tates may discriminate on the basis of age without offending the Fourteenth Amendment if the age classification in question is rationally related to a legitimate state interest."  *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 83 (2000).  Although recognizing this limited review, the magistrate judge found that defendants had not sufficiently articulated a legitimate state interest and thus recommended that plaintiff's claim for injunctive relief should be permitted to go forward.  Mag. Rec. at 21.  However, as with the due process claim, the magistrate judge recommended plaintiff's claim for damages be dismissed on the ground of qualified immunity.  *Id.* at 18-19.

Defendants urge that the claim for injunctive relief should be rejected as well, as there is no basis for finding a constitutional violation.  Defs.' Obj. at 4-7.  In reviewing a government policy that purports to discriminate on the basis of age, a court "'will not overturn such [government action] unless the varying treatment of different groups or

---

[6]  Again, plaintiff rejects the contention that the treatment protocol specifies an age cutoff, arguing instead that the 65-year threshold was created by defendants.  Pl.'s Obj. at 13-16.  As discussed above, I find that the protocol does expressly incorporate a 65-year age limitation.  It is the potentially discriminatory nature of the protocol itself that is at issue in this claim.

persons is so unrelated to the achievement of any combination of legitimate purposes that we can only conclude that the [government's] actions were irrational.'" *Kimel*, 528 U.S. at 84 (quoting *Vance v. Bradley*, 440 U.S. 93, 97 (1979)) (alterations in original). This standard gives the state substantial leeway in drawing age-related distinctions. For example, "a State may rely on age as a proxy for other qualities, abilities, or characteristics that are relevant to the State's legitimate interests." *Id.* Indeed, "[t]hat age proves to be an inaccurate proxy in any individual case is irrelevant. 'Where rationality is the test, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect.'" *Id.* (quoting *Mass. Bd. of Retirement v. Murgia*, 427 U.S. 307, 316 (1976)); *see also id.* at 86 ("Our Constitution permits States to draw lines on the basis of age when they have a rational basis for doing so at a class-based level, even if it 'is probably not true' that those reasons are valid in the majority of cases."). Age classifications are "presumptively rational," and it is up to plaintiff to prove that the basis for the classification "'could not reasonably be conceived to be true by the governmental decisionmaker.'" *Id.* at 84 (quoting *Bradley*, 440 U.S. at 111).

Here defendants' evidence shows a rational basis for the classification. Dr. Bloor's declaration, submitted with defendants' summary judgment brief, explains that age is relevant in determining suitability for treatment. Specifically, she notes that

> [f]ollowing infection with hepatitis C, most patients will go for years without knowing that they have the infection because they manifest no symptoms of hepatitis C. Medical studies have found that even after twenty (20) to thirty (30) years, only one (1) in twenty-four (24) patients will develop liver cirrhosis after being infected with Hepatitis C. About one (1) in seven (7) individuals or 15% will develop liver cancer in five (5) to ten (10) years

after cirrhosis of the liver is present.  However, importantly, most
individuals who contract Hepatitis C do not die of liver disease.

Defs.' Mot., Ex. A-3 ¶ 5.  As the treatment protocol explains, it is this advanced liver

disease, rather than simple hepatitis, that poses the greatest risks.  Compl., Ex. B-5

("'The majority of patients with [hepatitis C virus] infection have mild liver disease and

concern about this virus could be vastly reduced if it were not for the minority that

progress to cirrhosis.  All of the potentially life-threatening complications of [hepatitis C

virus] infection . . . occur in patients with advanced liver disease.'" (quoting NIH

Consensus Development Conference, Management of Hepatitis C, 2002, Patients with

Advanced Disease, Teresa L. Wright, M.D., June 11, 2002)).  Because the advanced

liver problems are unlikely to occur for twenty to thirty years after hepatitis C is

contracted, it was rational for the state to determine that persons diagnosed after age

65 are unlikely to suffer the life-threatening aspects of the disease and thus need not

be given the interferon/ribavirin treatment.

The decision to deny older inmates treatment is not "so unrelated to the

achievement of any combination of legitimate purposes" as to be irrational.  *Kimel*, 528

U.S. at 84.  As the decision was not constitutionally impermissible, plaintiff's claim must

be dismissed.

## V.  CONCLUSION

While plaintiff has a strongly held and good faith belief that he should receive

additional treatment for his condition, defendants' adherence to the treatment protocol

and their resultant determination that plaintiff did not qualify for that treatment did not

violate plaintiff's constitutional rights.  Without a constitutional violation, neither

injunctive relief nor damages is proper, and plaintiff's claims must be dismissed in their entirety. Accordingly, it is

ORDERED that the recommendations of the magistrate judge [Docket No. 184] are ACCEPTED in part and OVERRULED in part, as stated herein. It is further

ORDERED that plaintiff's motion to revisit the Eighth Amendment issue [Docket No. 178] is DENIED. It is further

ORDERED that defendants' motion for summary judgment [Docket No. 161] is GRANTED. It is further

ORDERED that judgment shall enter in favor of defendants and against plaintiff on all claims.

DATED March 5, 2010.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge